**WILLOW CREEK EXPLORATION LTD., Willow Creek, Inc., and Highwood Resources Plaintiffs**

v.

**TADLOCK PIPE & EQUIPMENT INC., Joy Pipe USA, LLC, Consolidated Pipe & Supply Co., Inc., Cappco Tubular Products, Lone Star Tubular Products, and Maverick Tube Corporation Defendants**

**No. 3:00CV970.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 11, 2002.

Clyde X. Copeland, III, Page, Kruger & Holand, P.A., Jackson, MS, for Plaintiffs.

J. Stephen Wright, Troy Philip Huskey, Wright & Martin, LLP, Ridgeland, MS, Randy L. Dean, Walter D. Willson, Wells, Marble & Hurst, Jackson, MS, for Defendants.

R. Keith Foreman, McKay, Simpson, Lawler, Franklin & Foreman, PLLC, Ridgeland, MS, fr Consolidated Pipe and Supply Co., Inc.

Christy D. JOnes, Kari L. Foster, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Cappco Tubular Products.

Dana E. Kelly, Kally, Gault & Mallette, LLP, Jackson, MS, for Lone Star Tubular Products.

John E. Wade, Jr., Brunini, Grantham, Grower & Hewes, Jackson, MS, Samuel E.L. Anderson, Watson & Jernigan, P.A., Jackson, MS, Thomas G. Gruenert, George Frederick Rhodes, Gibson-Gruenert, LLP, Houston, TX, for Maverick Tube Corp.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

This matter is before the court on two motions: (1) defendant Joy Pipe USA, LLC's ("Joy Pipe") motion to dismiss for lack of personal jurisdiction; and (2) defendant Cappco Tubular Products' ("Cappco") similar motion to dismiss for lack personal jurisdiction, both filed pursuant to Rule 12(b)(2) of the Federal Rule of Civil Procedure.[1] Plaintiffs Willow Creek Exploration, Ltd., Willow Creek, Inc., and Highwood Resources, Ltd., (hereinafter collectively referred to as "Willow Creek"), oppose the defendants' respective motions to dismiss, arguing that this court has personal jurisdiction over the defendants pursuant to Mississippi's long-arm statute[2] and consistent with the dictates of due process. Having considered the parties' briefs, oral arguments, the record and the law, the court is persuaded that this court is without personal jurisdiction over Cappco and Joy Pipe. Accordingly, this court hereby grants Cappco's and Joy Pipe's respective motions to dismiss.

## BACKGROUND FACTS

Willow Creek filed the instant action on November 15, 2000, against Defendants Tadlock Pipe & Equipment, Inc. ("Tadlock"), Joy Pipe, Consolidated Pipe & Supply Company, Inc., ("Consolidated"), Capp-

---

1. Rule 12(b)(2) provides:

   **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person ....

2. Miss.Code Ann. § 13–3–57 provides:

   Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this·state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

co, Lone Star Tubular Products ("Lone Star") and Maverick Tube Corporation ("Maverick") in the Circuit Court of Amite County, Mississippi. The defendants removed this matter to this federal court on December 20, 2000, invoking this court's diversity jurisdiction under Title 28 U.S.C. § 1332.[3] Willow Creek's amended complaint, filed on February 9, 2001, alleges claims for negligence, breach of contract, breach of implied warranty for a particular purpose, breach of implied warranty of merchantability, negligent misrepresentation, intentional misrepresentation, product liability, pattern and practice, and fraudulent concealment.

This cause arises out of the purchase of tubing, which was to be regularly used as production tubing for down hole use in oil wells and saltwater disposal wells in the Gillsburg Field location in Amite County, Mississippi. Willow Creek owned a one-half (1/2) percent interest in the Gillsburg Field.[4] Canadian Delta, Inc., ("Canadian Delta") owned the remaining one-half (1/2) percent interest in the Gillsburg Field.

On or about October 31, 1997, Canadian Delta[5] entered into an agreement with defendant Tadlock to purchase 15534.95 feet of 2 ⅜" 4.70 pound J55 8RD Tubing from Tadlock. The plaintiff claims that Tadlock expressly or implicitly held the tubing out as new J55 8RD tubing and warranted that it was acceptable for use as production tubing for down hole use in oil wells and was fully inspected. As per the oral contract, Tadlock had the tubing delivered to Willow Creek via common carrier at the Gillsburg Field in November of 1997.

Willow Creek placed the tubing in down hole use in at least two of the wells. On or about January 20, 1998, the tubing allegedly malfunctioned causing an immediate cease in the production of the wells. As a result of the alleged tubing failure, Willow Creek also claims that the entire Gillsburg Field was closed to future production.

Willow Creek alleges that each of the defendants is liable for the alleged failure of the tubing inasmuch as each of the defendants played a role in the distribution of the tubing in the stream of commerce. The record indicates that the tubing originated with defendant Maverick. Defendant Maverick manufactured the tubing. Willow Creek claims that the tubing as manufactured by Maverick met the definition of "used scrap tubing" not suitable for down hole oil country use. Willow Creek contends, however, that Maverick sold the tubing to Cappco as limited service tubing, but with the understanding that it was not suitable for down hole oil country use. Cappco later sold the tubing to defendant Consolidated as limited service tubing suitable for down hole oil country use. Then,

---

**3.** Title 28 U.S.C. § 1332 provides in pertinent part:

    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States . . . .

**4.** Willow Creek, Inc. and Highwood Resources, Ltd., together, are the title owners of the one-half (1/2) percent interest in Gillsburg. Willow Creek, Inc. and Highwood Resouces, Ltd are, however, wholly owned subsidiaries of Willow Creek Exploration, Ltd.

**5.** Canadian Delta is not a party to this lawsuit. A similar suit wherein Canadian Delta was the plaintiff was before the Honorable Tom S. Lee, Chief Judge of the United States District Court for the Southern District of Mississippi. In that litigation, the court held that it was without personal jurisdiction over Cappco. *See Canadian Delta, Inc. v. Tadlock Pipe,* Civil Action No. 3:99-cv-355LN (S.D.Miss. Feb. 20, 2001) (Memorandum Order and Opinion). Joy Pipe was not a defendant in that litigation.

defendant Consolidated next sold the tubing to Joy Pipe as limited service tubing rather than used scrap tubing. Joy Pipe likewise sold the tubing to Tadlock, through defendant Lone Star, as limited service tubing suitable for down hole use when, according to Willow Creek, it was not in fact so suitable. Willow Creek claims that Lone Star modified the tubing to make it appear suitable for down hole oil country use despite that it was not in fact so suitable. Tadlock then sold the tubing to Canadian Delta as API certified 2⅜″ 4.70 pound J55 8RD tubing suitable for down hole use, the transaction which served as the impetus for this lawsuit.

## JURISDICTIONAL FACTS

### *Cappco*

Defendant Cappco is a United States corporation with its principal place of business in Hamilton, Ontario CANADA.

Cappco has had no dealings with Willow Creek or Canadian Delta in Mississippi or elsewhere. Moreover, the transaction wherein Cappco sold the tubing to Consolidated occurred entirely within the State of Alabama.

Cappco has limited or no connections with Mississippi, the forum state. While Willow Creek contends that Cappco had a salesperson designated for the Mississippi area, Willow Creek has produced no evidence or indication that the salesperson ever made contact with Mississippi, or did any business in Mississippi. Cappco adds that it does not now direct, nor has it ever directed, its business activities to Mississippi or to any of its citizens, except for an occasional advertisement circular sent to potential vendors of its products.

Cappco further maintains, and Willow Creek does not dispute, that:

(1) it does not maintain, and has never maintained, an office, street address, mailing address, or telephone listing within the State of Mississippi;

(2) it does not have, and has never had, any employees agents, or officers that have either lived or worked in the State of Mississippi;

(3) it does not have now, and never has had, an interest in, use of, ownership or possession of real or personal property in the State of Mississippi;

(4) it is not, and has never been, qualified or licensed to do business in the State of Mississippi; and

(5) it does not have, and has never had, a registered agent for marketing, sales, or service of process in the State of Mississippi.

### *Joy Pipe*

Joy Pipe is a Texas limited liability company. Joy Pipe is not licensed to do business in the State of Mississippi.

Joy Pipe has not conducted business with Willow Creek or Canadian Delta in Mississippi or elsewhere. The transaction in which Tadlock purchased the tubing from Joy Pipe occurred entirely within the State of Texas.

Willow Creek contends that Joy Pipe's contacts with the State of Mississippi are sufficient to satisfy both the long-arm statute of the State and the requirements of due process. Specifically, Willow Creek alleges that:

(1) Joy Pipe maintains a passive website which can be viewed by citizens of Mississippi;

(2) Joy Pipe advertises in fourteen trade publications, eight of which have substantial circulation in Mississippi;

(3) Joy Pipe has transmitted ninety facsimiles to eleven Mississippi Corporations over the past five years; and,

(4) Joy Pipe has accumulated $188,000 in sales to Mississippi Corporations over the past five years; however, all corporations except one took delivery in Texas.

## THE LAW

To determine whether personal jurisdiction exists over a party, the court first looks to the long-arm statute of the forum state. *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 624 (5th Cir.1999). Provided the dictates of the long-arm statute are satisfied, the court must then examine whether the exercise of personal jurisdiction over the party in the forum state would be consistent with the Due Process Clause of the Fourteenth Amendment. *Id.* Only if the requirements of both the long-arm statute and Due Process Clause are met can the court exercise personal jurisdiction over a non-resident defendant. *Id.* The plaintiff, here Willow Creek, bears the burden of demonstrating that this court has personal jurisdiction over the non-resident defendants. *Roxco, Ltd. v. Harris Specialty Chem., Inc.*, 133 F.Supp.2d 911, 914 (S.D.Miss.2000).

Mississippi's long-arm statute, Miss. Code Ann. § 13–3–57, provides in pertinent part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Thus, a non-resident defendant falls within the purview of Mississippi's long-arm statute if the defendant: (1) commits a tort, any part of which occurred within the state, against a resident or nonresident of Mississippi; (2) makes a contract with a resident of this state to be performed in whole or part in the state; or (3) does business within the state.

Provided that the requirements of Mississippi's long-arm statute are satisfied, the court's exercise of personal jurisdiction over a non-resident defendant must nevertheless conform to the requirements of due process. The exercise of personal jurisdiction is consistent with due process if (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). The defendant's minimum contacts with the forum state may be such as to establish either specific or general personal jurisdiction. Specific jurisdiction exists if the non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from the alleged injuries that arise out of or relate to those activities." *Id.* at 868 (citation and internal quotation marks omitted). Minimum contacts are sufficient to support general jurisdiction if they are "continuous and systematic." *Guidry*, 188 F.3d at 624 (citation and internal quotation marks omitted).

## ANALYSIS

### I. *Personal Jurisdiction Over Cappco*

Willow Creek argues that both Mississippi's long-arm statute and the demands of due process are met such that this court

may exercise personal jurisdiction over Cappco. Specifically, Willow Creek contends that Cappco is subject to the contract and tort prongs of the long-arm statute. Willow Creek further claims that Cappco's contacts with the state are sufficient to create specific personal jurisdiction.

This court disagrees. The facts of this case simply do not support a finding of personal jurisdiction. While Willow Creek has demonstrated that Cappco is at least subject to the tort prong of Mississippi's long-arm statute, the court is not persuaded that Willow Creek has shown that the requirements of due process are satisfied.

### A. Mississippi's Long–Arm Statute

Willow Creek claims that both the tort and contract prongs of Mississippi's long-arm statute are satisfied. Willow Creek contends that its assertion of a breach of implied warranty of merchantability claim against Cappco satisfies the contracts prong of the long-arm statute, citing *Sorrells v. R & R Custom Coach Works, Inc.,* 636 So.2d 668 (Miss.1994). Willow Creek also alleges that its damages resulting from the alleged tortious conduct of Cappco occurred in Mississippi, thereby satisfying the tort prong of the long-arm statute. The court will address each contention in turn.

### 1. The Contract Prong

■ The contract prong of the long-arm statute applies to a non-resident defendant if the non-resident defendant makes a contract with a resident of the state, any portion of which is to be performed in the state. Miss.Code Ann. § 13–3–57. First and foremost, Cappco did not make a contract with Willow Creek or Canadian Delta for the purchase of the tubing. Cappco's contract, if any, to sell the tubing was with Consolidated, a resident of Alabama, not Mississippi. The record evinces no evidence that Cappco ever had any dealings with either Willow Creek, any other Mississippi resident or Canadian Delta. Further, the contract which actually gave rise to this dispute was between Tadlock and Canadian Delta; neither Willow Creek nor Cappco was a party to that contract. Based on the facts of this case, this court cannot conclude that Cappco entered into a contract with a Mississippi resident, or even that Cappco intended Willow Creek to benefit from the formation of Cappco's contract with Consolidated, possibly creating a quasi-contractual relationship between Willow Creek and Cappco.

■ Plaintiffs' mere assertion of a claim for breach of implied warranty of merchantability is also insufficient to trigger the contract prong of the long-arm statute. As evidenced by the clear language of the statute, the non-resident defendant must "make a contract with a resident of [Mississippi]" before the contract prong of the long-arm statute applies. Plaintiffs have shown no relationship between Willow Creek and Cappco. Cappco did not sell or warranty to Willow Creek the tubing which eventually made its way to the Gillsburg Field. If the product was warranted at all, the warranty was made by Tadlock to Canadian Delta, the parties to the purchase contract.

In this regard, Willow Creek's reliance on *Sorrels* is misplaced. While the *Sorrels* Court intimated that the existence of a warranty might satisfy the contract prong of the long-arm statute, the facts of the *Sorrels* case are quite different from the facts of the present case. The plaintiffs in *Sorrels*, who claimed to be Mississippi residents, purchased a motor home from a dealer in Las Vegas, Nevada. 636 So.2d at 669. The motor home was manufactured by a California company. When the motor home failed, the plaintiffs sued the manufacturer, among others. *Id.* The court concluded that no contract existed

between the plaintiffs and the defendant-manufacturer except any express or implied warranties. *Id.* at 671. Significantly, any warranty contractual relationship, the court insisted, arose at the time and the place of the purchase of the motor home, which occurred wholly within Nevada. *Id.* at 671–72.

Unlike the relationship between the parties in *Sorrells,* the relationship between Cappco and Willow Creek is tenuous at best. Cappco did not manufacture the tubing at issue. And there is no evidence that Canadian Delta knew or expected that Cappco would, or did, warrant the tubing to Canadian Delta at the time that it purchased the tubing from Tadlock. Moreover, Cappco, which acted as a wholesale distributor for Maverick, the manufacturer of the tubing, was thrice removed from the sale of the tubing to Canadian Delta. Whereas it was clear in the *Sorrells* case that the plaintiffs expected and/or knew that the defendant-manufacturer of the motor home warranted its product, this case presents an entirely different situation —— a situation which this court does not believe the Supreme Court of Mississippi contemplated in *Sorrells.*

Furthermore, even if the court concluded that a contractual relationship of some type exists or existed between Cappco and Willow Creek, Willow Creek has nevertheless failed to demonstrate that at least part of the contract was performed in Mississippi. In concluding that the plaintiffs in *Sorrells* could not rely on a warranty to satisfy the contract prong of the long-arm statute, the court found that the record in that case did not indicate that "any warranty work was actually performed in Mississippi pursuant to the warranty terms." 636 So.2d at 672. The court therefore held that "the warranty was insufficient to allow usage of the 'contracts' category of the long-arm statute to establish personal jurisdiction over [the defendant]." Likewise,

the record in the instant case is devoid of evidence that any warranty work by Cappco, or anyone else, was performed in Mississippi. Accordingly, as in *Sorrels,* plaintiffs cannot rely on the contract prong of the long-arm statute to confer personal jurisdiction over Cappco.

### 2. The Tort Prong

■ The court, however, is persuaded that the facts of this case fit within the contours of the tort prong of the long-arm statute. As the parties well recognize, the tort prong of the long-arm statute only applies if the nonresident defendant commits the tort, in whole or part, in the state of Mississippi. Miss.Code Ann. § 13–3–57; *Roxco,* 133 F.Supp.2d at 915.

Here, Willow Creek contends that Cappco is liable in tort for negligence, products liability, negligent misrepresentation, intentional misrepresentation and fraudulent concealment. Although the tubing was originally manufactured and reconfigured outside the state of Mississippi, and Cappco's sale of the tubing and the negotiation and sale of the tubing from Tadlock to Canadian Delta occurred outside Mississippi, Willow Creek nevertheless contends that at least parts of the tort alleged in its complaint occurred in the state because it suffered injury in the state when the tubing malfunctioned in the Gillsburg Field. To the extent that Willow Creek has any sort of tort claim against Cappco, and the court passes no judgment on whether such a claim is viable, the court agrees that a part of the alleged tort occurred within the State, thereby satisfying the tort prong of Mississippi's long-arm statute.

This conclusion is consistent with the Supreme Court of Mississippi's ruling in *Sorrels.* In *Sorrels,* the negotiation involving the purchase of the plaintiffs' motor home occurred outside the State of Mississippi. 636 So.2d at 669. The court never-

theless concluded that the tort prong of Mississippi's long-arm statute was satisfied because the plaintiffs' motor home malfunctioned in Mississippi. The court stated:

> Under now well established law, Mississippi's long-arm statute contains no requirement that the part of the tort which causes the injury be committed in Mississippi. Since injury is necessary to complete a tort, a tort is considered to have been committed in part in Mississippi where the injury results in the state.
>
> As a consequence of the occurrence of injury or damage to the Sorrells' motor home and other personal property within the State of Mississippi, the tort prong of the long-arm statute could have been properly utilized to assert personal jurisdiction over R & R, subject to the limitations imposed by the Due Process Clause.

*Id.* at 672.

This court has also stated that injury is a necessary element of a tort, the occurrence of which in the state of Mississippi would be sufficient to satisfy the tort prong of the long-arm statute.[6] *Thrash Aviation, Inc. v. Kelner Turbine, Inc.*, 72 F.Supp.2d 709, 714 (S.D.Miss.1999). Inasmuch as the injury to Willow Creek, i.e., the failure of the tubing, actually occurred in Mississippi, Willow Creek has met its burden of establishing that the tort prong of the long-arm statute is satisfied.

### B. Due Process Analysis

■ Even if Mississippi's long-arm statute is satisfied, this court cannot assert personal jurisdiction over Cappco unless the dictates of due process are met. As stated above, due process requires that the non-resident defendant have minimum contacts with the forum state and that the court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. In cases such as this where the plaintiff alleges that there is specific personal jurisdiction over the non-resident defendant, the defendant's contacts with the forum state must be purposeful and those contacts must result in the injury giving rise to the litigation. *Panda Brandywine Corp.*, 253 F.3d at 868.

In the instant case, there is no evidence that Cappco purposefully directed its activities at the forum state which resulted in the harm allegedly suffered by Willow Creek. The transaction between Cappco and Consolidated wherein Cappco sold the tubing in question to Consolidated, who is a resident of Alabama, occurred wholly within the State of Alabama. There is no indication that in conducting that transaction, Cappco intended that the tubing be sold to a Mississippi resident, that it would be resold in Mississippi or that it would be used in Mississippi. Thus, the activities upon which Willow Creek relies to assert its claims against Cappco did not occur within the State of Mississippi, nor did Cappco avail itself of the protection or benefits of the law of Mississippi to conduct the transaction.

Further, Cappco's isolated contacts with the state did not cause the injuries Willow Creek suffered —— the injuries that served as the impetus for this litigation. The

---

6. The court cautions, as it did in *Thrash*, that injury is to be distinguished from the consequential damages of tortious conduct. *Thrash Aviation, Inc. v. Kelner Turbine, Inc.*, 72 F.Supp.2d 709, 714 (S.D.Miss.1999). The injury itself must occur in Mississippi. The occurrence of some consequential damages in the state is insufficient to satisfy the tort prong of the long-arm statute. *Id.* "The term 'injury' commonly denotes the invasion of any legally protected interest of another whereas the term 'damages' is understood to mean the harm, detriment or loss sustained by reason of an injury." *Roxco*, 133 F.Supp.2d at 916.

record shows that Cappco had two types of contact with Mississippi: (1) it had a sales representative who would be responsible for Mississippi business; and (2) it distributed several years ago occasional unsolicited advertisements to possible vendors of its tubing in Mississippi. Neither of these contacts resulted in Cappco conducting any business in the state of Mississippi. And more importantly, Willow Creek's cause of action did not arise from these contacts. Consequently, they may not be considered as a basis for the exercise of specific jurisdiction. *See Panda Brandywine Corp.*, 253 F.3d at 868.

Willow Creek continues to argue, however, that Cappco is nevertheless subject to specific personal jurisdiction because it placed its tubing into the stream of commerce. This court disagrees.

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987). In order for a non-resident defendant to be subject to the specific personal jurisdiction of the forum state under a theory of stream of commerce, there must be some "substantial connection" between the defendant and the forum state. *Id.* This substantial connection "must come about by an action of the defendant purposefully directed toward the forum State." *Id.* As discussed above, Willow Creek has failed to demonstrate that Cappco purposefully directed its product or some other action toward the State of Mississippi. Therefore, even if Cappco placed its tubing into the stream of commerce with the awareness that it might reach Mississippi, this court cannot exercise specific personal jurisdiction over Cappco without a showing that it committed an act that itself was purposefully directed at Mississippi.

Inasmuch as Willow Creek has failed to show that Cappco has minimum contacts with Mississippi sufficient to meet due process requirements, the court hereby concludes that it cannot exercise personal jurisdiction over Cappco. Accordingly, Cappco's motion to dismiss for lack of personal jurisdiction is granted.

## II. *Personal Jurisdiction Over Joy Pipe*

■ Willow Creek similarly argues that this court has personal jurisdiction over Joy Pipe and that both the dictates of Mississippi's long-arm statute and the Due Process Clause are satisfied. Specifically, Willow Creek charges that Joy Pipe's conduct satisfies the tort and contract prongs of Mississippi's long-arm statute. Willow Creek essentially advances the same arguments with respect to Joy Pipe as it did with respect to Cappco. Therefore, for the reasons above stated, the court agrees that the claims asserted by Willow Creek and actions of Joy Pipe satisfy the tort prong of Mississippi's long-arm statute.

Willow Creek still must show that Joy Pipe has sufficient minimum contacts with Mississippi to subject it to the general personal jurisdiction of this court. As

stated above, general personal jurisdiction exists only where the minimum contacts of the non-resident defendant are "continuous and systematic." *Guidry,* 188 F.3d at 624 (citation and internal quotation marks omitted). This court is not persuaded that Joy Pipe's contacts with the state can be characterized as continuous and systematic.

Willow Creek points to several of Joy Pipe's contacts with Mississippi. First, Willow Creek points to Joy Pipe's website. The website is a passive website, i.e., the website does not allow a potential consumer to purchase products over the website. The website simply allows a viewer to learn about Joy Pipe's products and provides a link to various e-mail addresses of Joy Pipe officials. The Fifth Circuit has concluded that the existence of a passive website is not sufficient to subject a non-resident defendant to the personal jurisdiction of the forum state. *Mink v. AAAA Dev. LLC,* 190 F.3d 333 (5th Cir.1999). Faced with a similar argument, the court stated,

> we conclude that AAAA's website is insufficient to subject it to personal jurisdiction. Essentially, AAAA maintains a website that posts information about its products and services. While the website provides users with a printable mail-in order form, AAAA's toll-free telephone number, a mailing address and an electronic mail ("e-mail") address, orders are not taken through AAAA's website. This does not classify the website as anything more than passive advertisement which is not grounds for the exercise of personal jurisdiction.

*Id.* at 336–37.

■ Willow Creek further argues that while the existence of the passive website alone may not be sufficient to establish minimum contacts, that when considered with Joy Pipe's other contacts, these contacts together establish "systematic and continuous" contact. Specifically, Willow Creek argues that Joy Pipe advertises in fourteen trade publications, eight of which has substantial circulation in Mississippi. However, Willow Creek has presented no evidence of the frequency of these advertisements or over what time period Joy Pipe has placed the advertisements. Willow Creek also points to ninety facsimiles which Joy Pipe transmitted to eleven Mississippi Corporations over a period of five years. And finally, Willow Creek states that Joy Pipe has earned $188,000 in sales to Mississippi Corporations over the past 5 years. There is no evidence, however, of what percentage of Joy Pipe's total revenue came from this revenue over that five-year period. Considering all of Joy Pipe's contacts in the aggregate, the court is still not persuaded that Joy Pipe's contacts with the state are continuous and systematic. In making this decision, this court finds instructive the case of *Paul v. International Precious Metals Corporation,* 613 F.Supp. 174 (S.D.Miss.1985)

In *Paul,* the plaintiff, a Mississippi resident, read an advertisement in the *Wall Street Journal,* which was circulated in Mississippi, about the non-resident defendant's products. The plaintiff contacted the defendant, a Florida corporation, using a toll-free number that was listed in the advertisement. After consulting with the defendant's representatives, the plaintiff agreed to purchase one of the defendant's products. The plaintiff mailed a number of checks to the defendant drawn on his Mississippi bank. The defendant mailed a customer account agreement and a summary risk to the plaintiff, which the plaintiff signed and returned to the defendant in Florida. In addition, several calls were placed between the plaintiff in Mississippi and the defendant's agents in Florida. Based on these contacts, the plaintiff argued that this court had personal jurisdiction over the defendant. *Paul,* 613 F.Supp. at 175–76.

The court rejected the plaintiff's arguments. The court reasoned that solicitation that involved no personal in-state contact could not support the exercise of personal jurisdiction. *Id.* at 176. The court likewise concluded that telephone calls to and from the plaintiff's forum state were insufficient. *Id.* The court also rejected the plaintiff's argument that contracts with possibly thirty-nine Mississippians valued at approximately $1,124,121.21 was sufficient to show that the defendant had continuous contact with the state. *Id.* at 177 n. 2. The court responded,

> [i]n response the Defendant contends the dollar figure is inflated since it reflects the total value of the commodities options, rather than the actual amount invested by the customers. Secondly, the Defendant argues that the 39 customers merely indicate individuals giving the Defendant Mississippi addresses and does not necessarily indicate that they are Mississippi residents. Finally, the Defendant argues that 39 customers out of 7,580 files searched indicates less than 1/2 of 1% of the Defendant's business is related in any way to Mississippi. The Court is convinced that the volume of business, even assuming it were with Mississippi customers, would be insufficient in and of itself to assert in personam jurisdiction over this Defendant in Mississippi.

*Id.*

Similarly, the contacts on which Willow Creek relies are fraught with uncertainties and unknowns. This court has no evidence before it of the frequency with which Joy Pipe advertises in the various trade publications or how often the trade publications are in circulation — whether they are produced annually, quarterly, monthly, etc. In addition, the court is unaware of whether the facsimiles to the Mississippi corporations, which occurred over a span of five years, were solicited or unsolicited. There is no evidence of whether the contact was initiated by a Mississippi resident seeking to purchase Joy Pipe's products, whether they were initiated by Joy Pipe seeking to sell its products or whether the facsimiles were even related to the sale of Joy Pipe's products. And finally, the plaintiff has failed to demonstrate what percentage of Joy Pipe's total sales came from the $188,000 in revenue from Mississippi Corporations over a five year period. In fact, as to these sales, the record demonstrates that only once was the product actually delivered to Mississippi. Based on these facts and the law, this court cannot conclude that Joy Pipe's contacts with Mississippi were systematic and continuous. The court therefore concludes that Willow Creek has failed to demonstrate the minimum contacts necessary to exercise jurisdiction over Joy Pipe.

Furthermore, this court's exercise of personal jurisdiction over Joy Pipe in this case would surely offend notions of fair play and substantial justice, particularly since this action did not arise from Joy Pipe's contacts with the state. Instead, the basis for this action arose from a contract between two non-Mississippi residents that was negotiated and consummated in Texas. Further, neither Joy Pipe nor Willow Creek was a party to this contract; the contract was between Canadian Delta and Tadlock. Moreover, Tadlock's purchase of the tubing from Joy Pipe occurred wholly within the state of Texas. Joy Pipe had no way of knowing that the tubing would then be purchased from Tadlock and shipped to Mississippi. Joy Pipe therefore had no way of knowing that it would be required to defend a lawsuit regarding the quality of this product in Mississippi. This court thus concludes that requiring Joy Pipe to now defend such a lawsuit in the State of Mississippi would offend traditional notions of fair play and substantial justice. *Cf., e.g., Stre-*

*ber v. Hunter*, 221 F.3d 701, 718–19 (5th Cir.2000) (holding that traditional notions of fair play and justice were not offended by requiring non-resident defendant to defend suit in Texas when defendant knew that his client/plaintiff was Texas resident and that lawsuit arose out of defendant's contacts with Texas).

Because Willow Creek has failed to carry its burden of demonstrating that this court's exercise of personal jurisdiction over Joy Pipe is consistent with the Due Process Clause, this court must grant Joy Pipe's motion to dismiss for lack of personal jurisdiction.

## CONCLUSION

For foregoing reasons, the court concludes that it is without jurisdiction over Cappco and Joy Pipe. Accordingly, this court hereby grants Cappco's and Joy Pipe's respective motions to dismiss for lack of personal jurisdiction without prejudice.