TELLUS OPERATING GROUP,
L.L.C. Plaintiff

v.

R & D PIPE COMPANY,
et al Defendants

No. CIV.A. 2:04CV418KSJMR.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

July 19, 2005.

Glenn Gates Taylor, Christy M. Sparks, Donald James Blackwood, Jr., Copeland, Cook, Taylor & Bush, Ridgeland, MS, J. Shannon Clark, Shannon Clark, Attorney, Waynesboro, MS, for Plaintiff.

R. Web Heidelberg, Derek Royce Arrington, Heidelberg & Woodliff, P.A., Hattiesburg, MS, Percy L. Wayne Isgitt, C. Zan Turcotte, Isgitt & Associates, PC, Houston, TX, for Defendants.

### MEMORANDUM, OPINION AND ORDER

STARRETT, District Judge.

This matter is before the Court on two motions: (1) Defendant R & D Pipe Company's (hereafter "R & D") Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3); and (2) Defendant SEPCO Tubulars, Inc.'s, (hereafter "SEPCO") Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3) and 12(b)(6). The motions are opposed by Tellus Operating Group, L.L.C. (hereafter "Tellus") arguing that this Court has personal jurisdiction over the defendants, that venue is proper and a claim upon which relief can be granted is stated.

The Court has considered the motions, responses, memoranda, etc., and finds that under existing law in this circuit, that the motions should be overruled for the following reasons.

## FACTUAL BACKGROUND

Tellus, a Mississippi limited liability company, drills and operates oil and gas properties in Mississippi. During the process of drilling and completing a well in Jones County, Tellus required steel pipe, known as "casing," to line the hole that had been drilled in order to prepare the well for production. Tellus solicited bids from various suppliers, including R & D, based on the specific needs of this project. The specifications for the pipe needed to line the well were clearly spelled out by Tellus in their bid requests. Ultimately, following a number of phone and electronic communications, Tellus finalized an agreement to purchase the casing from R & D. R & D in turn purchased the casing from SEPCO. The casing was sold to Tellus by R & D "FOB Houston" and delivered via common carrier to the well location in Jones County. Tellus began installation of the casing and, according to their complaint, the casing failed during installation. Tellus attributes the failure to either inherent manufacturing defects or mislabeling, making the pipe unsuitable for the use warranted by the sellers. The casing failure forced Tellus to redrill and repair the hole at significant expense.

## ANALYSIS

Both the defendants are Texas corporations who maintain no offices, employees, agents, sales representatives, telephone listings, or bank accounts in the State of Mississippi, nor own any real or personal property located in the State of Mississippi. Both defendants argue that they have no contacts with the State of Mississippi and no basis exists for the exercise of personal jurisdiction over them in Mississippi.

### Applicable Law on Personal Jurisdiction

The Fifth Circuit has aligned with sister circuits in holding that "conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiffs' favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir.1990)(internal citations omitted). The party who attempts to invoke the jurisdiction of the court bears the burden of establishing a *prima facie* case of personal jurisdiction over the defendant. *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir.1985). Consequently, the allegations in the plaintiff's complaint must be taken as true and "conflicts between the facts contained in the parties affidavits must be resolved in plaintiff's favor." *Id.* at 546. Even so, the caveat exists that "the *prima facie*-case requirement does not require the court to credit conclusory allegations, even if uncontraverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir.2001).

This Court, sitting in diversity, must apply the law of Mississippi. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 77, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) 304 U.S. 64, 58 S.Ct. 817, 822, 82 L.Ed. 1188. Accordingly, personal jurisdiction over a defendant can be exercised to the same extent that the State court in this forum could. *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990). The reach of such jurisdiction is limited by the state's applicable long-arm statute as well as the due process requirements of the Fourteenth Amendment. *Id.*

In order for a Mississippi court to exercise personal jurisdiction over a non-resident defendant, the plaintiff must first demonstrate that the defendant falls within one of the three prongs of the Mississippi long-arm statute. *First Trust National Assn. v. Jones, Walker, Waechter, Poitevent, Carrere and Denegre*, 996 F.Supp. 585, 590 (S.D.Miss.1998). These include

the "tort prong," the "contract prong," or the "doing business prong" of the state's statute. *See* Miss.Code Ann. § 13–3–57.

■ Mississippi has adopted the "single tort" provision as a proper basis for meeting the statutory threshold, and hence the "tort prong" of the long-arm statute is satisfied when a tort, or any part of it, is committed against the plaintiff in Mississippi. *Sorrells v. R. & R. Custom Coach Works, Inc.,* 636 So.2d 668, 671 (Miss. 1994). The plaintiff carries the burden to establish that the defendant committed the alleged tort, in whole or in part, within the state.

■ After establishing that the state's long-arm statute encompasses the defendant's activity for purposes of the suit, the plaintiff must also ensure that the state's exercise of personal jurisdiction over the defendant would be permissible under the Fourteenth Amendment. As such, the defendant's contacts with the forum state must be sufficient so as to "not offend the traditional notions of fair play and substantial justice." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Perhaps more importantly, the "defendant's conduct in connection with the forum state must be such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. 559.

### Placing the Tort

The Mississippi long-arm statute provides:

Any non-resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall... commit a tort in whole or in part in this state against a resident or non-resident of this state...shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss.Code Ann. § 13–3–57.

■ A highly similar fact pattern was recently presented before this district in the *Willow Creek Exploration* case. *Willow Creek Exploration LTD. v. Tadlock Pipe & Equip., Inc.,* 186 F.Supp.2d 675 (S.D.Miss.2002). The plaintiffs in that action had purchased similar metal tubing, based on alleged specifications from the defendant seller, to be used for oil well production in Amite County, Mississippi. This tubing malfunctioned, causing an immediate cessation of production at the plaintiff's facility as well as resulting damages. Despite the fact that the tubing in question was manufactured and reconfigured outside the state, and that the sale contract was executed out of state, the court found the tort prong of the state statute to be satisfied. *Id.* at 683. In its ruling, the court noted that "because Willow Creek suffered injury in the state when the tubing malfunctioned," a part of the tort had occurred in the state sufficient to permit jurisdiction under the long-arm statute. *Id.* The court also pointed to an analogous holding of the Mississippi Supreme Court, which stated that "since injury is necessary to complete a tort, a tort is considered to have been committed in part in Mississippi where the injury results in the state." *Sorrells v. R & R Custom Coach Works, Inc.,* 636 So.2d 668, 672 (Miss.1994). Turning to the action presently before the court, the tubing sold by the defendants and installed by Tellus collapsed in Mississippi, causing damages and thereby completing the alleged tort. Following the logic of *Sorrells* and *Willow Creek,* the completion of the tort in Mississippi satisfies the long-arm statute to permit this court to exercise personal jurisdiction over the defendants.

To contest application of the statute on this point, the defendants attempt to draw a distinction between the damages that complete the tortious negligence and the economic consequences that resulted. Based on their reasoning, only the latter economic effects of the tort were felt in Mississippi, and this alone is insufficient to permit a Mississippi court to exercise personal jurisdiction. *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir.1987).

While the defendant cites good law, it is clear that the Fifth Circuit never intended a state to sacrifice the sovereign power of their courts by rightfully delineating a difference between far flung economic effects of torts and the far more common scenario where the injury and damages occur together in place and time. *See Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir.1997). The real purpose of this distinction is to prevent the economic ripples of tortious activity in the commercial sphere from radically expanding the reach of the long arm statute to encompass the location of "economic effects" of a tort or its resultant "pain and suffering" *Jobe*, 87 F.3d at 753.

In the case before this court, the pipe collapsing completed the tort (damage requirement) and created numerous economic effects (costs associated with the collapsing pipe and subsequent redrilling of the oil well). In other words, because the tort and its resultant injuries occurred within Mississippi, the court's exercise of personal jurisdiction over the alleged tortfeasor is comfortably within the contours of the "tort prong" of the state's long-arm statute.

### Due Process Concerns

However, the analysis cannot stop here. After establishing the state's long-arm statute encompasses the defendant's activity for the purpose of the suit, the plaintiff must also ensure that the state's exercise of personal jurisdiction over the defendant

would be permissible under the due process requirement of the Fourteenth Amendment. As such, the defendant's contacts with the forum state must be sufficient as to "not offend the traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

██ When a forum exercises personal jurisdiction over a defendant, it must be either base its jurisdiction on general or specific activity. General jurisdiction can be exercised when a defendant has such continuous and systematic contacts with the forum that the alleged incident need not even originate or involve the forum state to permit it to host the litigation. Specific jurisdiction, on the other hand, requires that a defendant is haled into the forum court for specific activities purposefully directed at the forum state which give rise to the action. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir.2001). When exercising the latter, not only does the basis for specific jurisdiction need to arise out of the contacts with the forum state, but the court must find "some act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Such a judicial requirement is to prevent a defendant from being "haled into a jurisdiction solely as a result of 'random', fortuitous', or 'attenuated' contacts." *Id.; See also Johnston v. Pneumo Corp.*, 652 F.Supp. 1402 (S.D.Miss.1987) (declining to find purposeful availment when catalog from which order placed was solicited by plaintiff, and represented only activity of defendant in reaching out to the forum state).

Finally, the court must ensure that "such exercise of jurisdiction over the de-

fendant does not offend the traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867. Even if the forum state has significant interest in hosting the litigation, the due process clause acts "as an instrument of interstate federalism, [and] may sometimes act to divest the state of its power to render a valid judgment." *Johnston v. Pneumo Corp.*, 652 F.Supp. 1402, 1408 (S.D.Miss.1987).

The plaintiffs in this case have submitted affidavits and depositions evidencing that R & D purposely availed itself of servicing some portion of the Mississippi marketplace, and particularly the Mississippi plaintiffs, with casing products. According to the plaintiff's submissions, R & D asked to be included on Tellus' working list of vendors to provide quotes for tubing jobs as they arose. R & D also allegedly made a number of cold calls to Tellus over a period of two years to stay apprised of Tellus' operations and to submit quotes when appropriate. Although there is some dispute as to how the product arrived in Mississippi, R & D certainly intended it to arrive there to fill the order of their Mississippi customer, who would immediately install it into a fixed Mississippi well.

The plaintiffs further alleged through affidavits that R & D president, Don Underwood, traveled to the state to help repair the damaged casing after it failed. Their affidavits claim that Underwood stayed for four days, suggested various techniques that would help retrieve the damaged tubing from the well, and eventually sold additional R & D products to Tellus to complete the repair. (Exhibit B, affidavit of Ken McCumber at 5).

R & D intended to have a continuous, recurring, and purposeful connection with its customer base which included Tellus. Even though this court must be cautious not to collapse the concepts of specific and general personal jurisdiction for the purpose of this analysis, it recognizes that they will inevitably borrow from one another in deciphering the intent of the defendant's actions as well as the foreseeability that the defendant might be haled into court in this state. R & D was an aggressive, hands-on seller who stood ready to service its products and its customers, even in Mississippi. It reached out to the forum state for profit, and it does not violate fair play and substantial justice to require R & D to defend this suit in Mississippi.

### As to SEPCO

SEPCO's involvement differs substantially from that of R & D. Based on evidence submitted, SEPCO would normally purchase the pipe abroad, have it delivered to Houston, and then inspect, label, thread and assimilate it fill customer orders. These customers were generally distributors such as R & D. In order to find personal jurisdiction over SEPCO, this court must determine that, by putting its products into the stream of commerce in this manner, SEPCO's activities meet the requirements for due process as well.

Perhaps the most significant Supreme Court opinion regarding the stream of commerce and its implications on proper exercise of personal jurisdiction remains the *Asahi* case. In that action, a plurality of four justices of the Court argued that:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state...a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano County,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Without a showing that the defendant indicated "an intent or purpose to serve the market in the forum state," the plurality felt it would violate due process to hold them to personal jurisdiction, even if they were subjectively aware that products would eventually be deposited there. *Id.* In applying the *Asahi* rational to the similar facts of *Willow Creek,* that court held that the plaintiffs had failed to make a *prima facie* showing that the various manufactures and distributors had done anything more than place their products into the stream of commerce. Though it was shown that the defendants reaped significant revenue from a forum state by way of resale of their product, the court in *Willow Creek* was not persuaded that the contacts were sufficient to meet the due process requirements of personal jurisdiction. *Willow Creek Exploration. LTD.,* 186 F.Supp.2d at 686.

The plaintiffs in this action are not claiming that SEPCO is subject to general personal jurisdiction in Mississippi based on anything like systematic or continuous activity, but that SEPCO's modification and sale of the casing to R & D was sufficient to pass due process muster. Although the plaintiffs claim that SEPCO "sold the pipe at issue to R & D knowing that it would be resold to Tellus for use in Mississippi," this is stretching the bounds of the affidavit from which it is drawn. *See* affidavit of Don Underwood at page 19. However, based on the other exhibits, it seems SEPCO was notified that the eventual destination of the casing would be Mississippi, as the R & D agent referred in an email to "shipments to Mississippi." (*Id.* citing Exhibit 3). The question is squarely before this court to decide whether or not placing the pipe in the stream of commerce, with knowledge that it would reach Mississippi, is sufficient to satisfy the due process concerns of personal jurisdiction.

Prior to *Asahi,* the Fifth Circuit followed the stream of commerce rationale expounded in *Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir.1980). The defendant in *Oswalt* was a Japanese manufacturer who sold cigarette lighters to a national distributor, one of which malfunctioned in Texas. In reaching its conclusion to hold the manufacturer to personal jurisdiction in Texas, the court noted that the manufacturer never "attempted in any way to limit the states in which the lighters could be sold . . . but actually had every reason to believe its product would be sold" in any and all states. *Id.* at 200.

■ Because the language in *Asahi* requiring an analysis akin to "stream-of-commerce-plus" could not garner a fifth vote, and hence never became controlling, the Fifth Circuit has held to the pre-*Asahi* analysis demonstrated and applied in *Oswalt.* Until the U.S. Supreme Court speaks with a majority, the law of this circuit remains that the plaintiff must only make a *prima facie* showing that "a defendant placed their product into the stream of commerce with the knowledge that the product would be used in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.,* 9 F.3d 415, 419 (5th Cir. 1993).

■ The plaintiffs in this case have pled sufficient facts and submitted properly limited evidence that SEPCO placed its products into the stream of commerce with the knowledge that they would wind up in Mississippi. Further, the failure to make any effort to limit the eventual resale destination of products placed into the stream of commerce is also a factor in favor of finding proper personal jurisdiction. *See Laird v. Deep Marine Technology, Inc.,* 2004 WL 2984282 (E.D.La.2004). Since the Fifth Circuit has maintained its pre-

*Asahi* line that such commercial activity with minimal knowledge is sufficient to satisfy due process, this court can and must rightfully require SEPCO to defend the current action in the forum state.

### SEPCO's Request for Dismissal for Failure to State a Claim

This court has found that SEPCO may be held to personal jurisdiction in this forum. It is therefore necessary to consider SEPCO's request to be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

 SEPCO maintains that it is not a seller of the pipe in question, that privity is required in order to hold it liable for the sale of the pipe, and that it made no warranties on the pipe as to its fitness for a particular use. Mississippi law holds that "any description of the goods which is made a part of the basis of the bargain creates an express warranty that the goods shall conform to that description." Miss.Code Ann. § 75–2–313(1)(b). The plaintiffs have alleged that SEPCO warranted the casing to be P–110 strength in composition and has stated a sufficient claim that a court might grant them relief for breach of this warranty. As the Northern District of Mississippi has explained, a "plaintiff who is injured due to a breach of warranty may recover from each seller of the individual product which caused the injury, so long as the product was defective when each respective seller possessed it." *Curry v. Sile Distributors,* 727 F.Supp. 1052, 1054 (N.D.Miss.1990). Moreover, privity is not a requirement for "negligence, strict liability or breach of warranty," and therefore cannot be the basis for the failure to state a claim for negligence and breach of warranty against SEPCO. Miss.Code Ann. § 11–7–20.

Once this court finds that it can exercise personal jurisdiction over SEPCO, the court should deny the Motion to Dismiss by SEPCO for failure to state a claim upon which relief can be granted.

Accordingly, the defendants' Motions to Dismiss Under Rule 12(b)(2), 12(b)(3) and/or 12(b)(6) are DENIED.