**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 00-11158
Summary Calendar

PANDA BRANDYWINE CORPORATION; and
PANDA GLOBAL HOLDINGS, INC.,

Plaintiffs-Appellants,

v.

POTOMAC ELECTRIC POWER COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
Dallas Division

June 22, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:

Appellants Panda Brandywine Corporation ("PBC") and Panda Global Holdings, Inc.

("PGH") appeal the judgment of the district court dismissing their action for lack of personal

jurisdiction over Appellee Potomac Electric Power Company. We AFFIRM.

I.

Appellants are Delaware corporations that maintain their principal places of business in Dallas, Texas. Appellants are both affiliates of Panda-Brandywine, L.P. ("PBLP"), a Delaware limited partnership of which Appellant PBC is general partner. Appellant PGH is the indirect owner of all of the shares of PBC and is the guarantor of certain bonds issued by another of its subsidiaries and guaranteed by PBC's cash flow. PBLP oversees the operations of an electricity-generating power plant in Brandywine, Maryland ("Brandywine facility"). Appellee is a utility incorporated in Virginia and District of Columbia and maintains its principal place of business in Washington, D.C.

PBLP sells electricity generated by the Brandywine facility to Appellee under a long-term power purchase agreement ("PPA"). To finance the facility's operations, PBLP and Appellants entered into certain financing agreements, including a participation agreement, a facility lease, and a trust indenture, with various financial institutions. These financing agreements interrelate with the PPA by encumbering the revenue paid by Appellee to PBLP pursuant to the PPA. Appellee is not a party to any of these financing agreements.

When Appellee decided to divest certain electricity-generating assets and power-purchasing contracts, including the PPA, PBLP objected, and Appellants ultimately sued Appellee in County Court of Dallas County, Texas, alleging that Appellee tortiously interfered with Appellants' financing agreements. Appellants specifically alleged that Appellee's actions caused the "potential" for Appellants to be in default under the financing agreements. Appellee removed the action pursuant to diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441 to the district court, which then granted Appellee's motion to dismiss for lack of personal jurisdiction without holding a hearing. Appellants timely appealed that decision to this court.

II.

A.

We review the district court's dismissal for lack of personal jurisdiction *de novo*. *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000). In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law. *See id.*; FED. R. CIV. P. 4(e)(1). In this action, the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *See* 2 TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 1997); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Therefore, we review whether the district court correctly held that exercising personal jurisdiction over Appellee would be inconsistent with due process. *See Alpine View Co.*, 205 F.3d at 214.

Exercising personal jurisdiction over a nonresident defendant is consistent with due process when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Id.* at 215 (citations and internal quotation marks omitted); *Felch v. Transportes Lar-Mex*, 92 F.3d 320, 323 (5th Cir. 1996); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Alpine View*, 205 F.3d at 215. Because Appellants did not argue the existence of general jurisdiction before the district court or this court, our analysis is limited to whether Appellants' allegations support specific jurisdiction, which exists when a nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quoting *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (internal quotation marks omitted). Where a district court dismisses for lack of personal jurisdiction without a hearing, as in this action, we review the dismissal to determine whether the plaintiff presented sufficient evidence to support a prima facie case supporting jurisdiction. *Id.* We accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor. *Id.*; *Felch*, 92 F.3d at 326 n.16.

B.

The district court concluded that specific jurisdiction did not exist because Appellee did not have the requisite minimum contacts with Texas. The district court found Appellants' jurisdictional allegations to be conclusory, and determined that Appellee's contacts with Texas were constitutionally insufficient because Appellants' tortious interference claims involved financing agreements not governed by Texas law, not to be performed in Texas, and unrelated to Texas other than the fortuity that Appellants reside in Texas.

Appellants contend that the district court erred in two principal ways. First, Appellants argue that the district court erred by not accepting their jurisdictional allegations as true and by rejecting them as conclusory. Second, Appellants contend that had the district court accepted their jurisdictional allegations as true, they presented a prima facie case for exercising specific jurisdiction over Appellee because Appellee knew the existence and terms of the financing agreements with which it allegedly interfered, knew its actions in divesting its interest in the PPA would cause harm in Texas, and intended to cause such harm. Appellants assert that the district court erred by examining choice-of-law provisions and forum-selection clauses of the financing agreements in conducting the jurisdictional analysis. Appellants finally add that exercising specific jurisdiction under these facts

comports with fair play and substantial justice.

We disagree. Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for specific jurisdiction has been presented. Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state. *See Burger King*, 471 U.S. at 474 ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."); *Far West Captial, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("[T]he mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."); *IMO Indus., Inc. v. Kiekert, A.G.*, 155 F.3d 254, 263 (3d Cir. 1997); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir.1997), *cert. denied*, 523 U.S. 1048 (1998). The district court's examination of Appellee's contacts beyond those alleged in Appellants' petition is therefore not a rejection of Appellants' allegations as false, but a straightforward application of the due-process-minimum-contacts analysis. Moreover, the district court correctly held that the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted. *See Felch*, 92 F.3d at 326 n.16 (crediting nonconclusional factual allegations of the complaint to the extent those are not controverted by any of the evidence); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) ("[T]he law does not require us to struthiously to credit conclusory [jurisdictional] allegations or draw farfetched inferences.") (citation and internal quotation marks omitted). Appellants' sole evidence is their state court petition, which alleges "on information and belief" that Appellee knew

Appellants are Texas residents and knew its actions would intentionally cause harm to Appellants in Texas. Appellants present no other evidence of Appellee's contacts with Texas relating to Appellants' claims, and thus the district court properly concluded that the allegations are merely conclusory.

More importantly, even if Appellants' allegations are not conclusory, they are nonetheless insufficient to establish a prima facie case for jurisdiction over Appellee. Appellants rely on *Calder v. Jones*, 465 U.S. 783, 789 (1984), which upheld specific jurisdiction in a California court over Florida defendants based on the allegedly libelous "effects" of their Florida conduct in California, in arguing that Appellee's actions allegedly caused tortious "effects" in Texas sufficient to support jurisdiction. However, *Calder*'s "effects" test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998). "'[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum.'" *Id.* (quoting *Wallace*, 778 F.2d at 395). Appellants' allegations, even if true, only relate to the foreseeability of causing injury in Texas, which is not a "sufficient benchmark" for specific jurisdiction. *Burger King*, 471 U.S. at 474; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."). The "foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should *reasonably* anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (emphasis added). To conclude that a defendant should "reasonably anticipate" being haled into the forum State requires "some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," or "purposefully directs" its efforts toward the forum State residents. *Id.* at 475, 476.

Under this standard, Appellants' allegations are simply insufficient. There are no facts suggesting that Appellee purposefully availed itself of the privilege of conducting activities in Texas and invoked the benefits and protections of Texas's laws when it acted to divest its interests in the PPA. While Appellants' allegations seem to suggest that Appellee purposefully directed its actions toward them, the district court correctly held that such allegations were insufficient because the financing agreements are not governed by Texas law, are not to be performed in Texas, and have no relation to Texas other than the fortuity that Appellants reside there. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772-73 (5th Cir. 1988). Appellants' contention that the district court erred by considering such terms lacks merit because such consideration is not only proper, but *required* under the due-process-minimum-contacts analysis. *Burger King*, 471 U.S. at 479; *Southmark*, 851 F.2d at 772-73. If we were to accept Appellants' arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts, and would have to appear in Texas to defend the suit "no matter how groundless or frivolous the suit may be." *Wallace*, 778 F.2d at 395. Such result would completely vitiate the constitutional requirement of minimum contacts and purposeful availment. We refuse to ignore the limits of specific jurisdiction to allow Appellants to sue Appellee in the district court based on Appellants' self-serving allegations when the "potential" injury claimed by Appellants resulted from interference with financing agreements that have nothing to do with Texas except for the mere fortuity that Appellants reside there.

Because of our conclusion, we need not examine whether exercising specific jurisdiction over Appellee comports with "fair play and substantial justice." We also need not determine Appellee's motion to dismiss appeal, and that motion is denied as moot. *See Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574 (1999) (noting that personal-jurisdiction issues could be decided before subject-matter jurisdiction issues).

III.

For the foregoing reasons, the order and judgment of the district court dismissing Appellants' action without prejudice for lack of personal jurisdiction is AFFIRMED. Costs are taxed against Appellants.