UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 01- 20748


KWIK-KOPY CORPORATION

Plaintiff-Appellant

versus

DONALD BYERS, JR.; DOROTHY M.
BYERS, INDIVIDUALLY; GERHARDT SERVICES,
INC. D/B/A ALLEGRA PRINT &
IMAGING

Defendants- Appellees


Appeal from the United States District Court
for the Southern District of Texas
SA: H-01-1740

May 9, 2002


Before BARKSDALE and STEWART, Circuit Judges, and DUVAL, District Judge[1]. [2]

STANWOOD RICHARDSON DUVAL, District Judge:

For this appeal the principal issues are: (1) whether the district court applied the proper

standard in determining whether it had personal jurisdiction over the defendant and (2) indeed,

whether the court had no personal jurisdiction over the defendant.

_____

[1] District Judge of the Eastern District of Louisiana, sitting by designation.

[2] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

1

I.

Kwik-Kopy (KK) is a Nevada corporation with its principal place of business in Harris County, Texas. Defendant Gerhardt Services, Inc., d/b/a Allegra Print & Imaging ("Allegra"), is a Colorado corporation with it principal place of business in Colorado Springs, Colorado. Defendants Donald and Dorothy Byers are individuals residing in Colorado Springs, Colorado.

In 1979, the Byers entered into a franchise agreement with KK to operate a franchise in Colorado Springs, Colorado (KK 213). One of the obligations described in the franchise agreement required the franchisee to obtain KK's approval before transferring the franchise. On March 5, 2001, Donald Byers contacted KK to: (1) inform it that he was seriously in debt and going out of business and (2) seek permission to sell his franchise to Allegra or to transfer the inventory to another KK franchise. Again, on March 23, 2001, Byers contacted KK seeking permission to sell his franchise. It is disputed whether KK responded to either of Byers' communications. On April 13, 2001, Byers sold a portion of the inventory consisting of customer obligations, customer lists, telephone numbers, goodwill, other unspecified inventory, and fixed assets to Allegra.

On May 23, 2001, KK initiated suit against Allegra and the Byers in the United States District Court for the Southern District of Texas in Houston alleging breach of contract, unfair competition, trademark infringement and tortious interference with contract and sought a temporary restraining order against Allegra arguing that: (1) Allegra had enticed Byers to breach the franchise agreement and had obtained confidential information and trade secrets through its purchase of the franchise, (2) Allegra's president knew the franchise agreement contained restrictions on re-sale and that any damages from the breach of that agreement would be felt in Texas, and (3) KK would suffer immediate and irreparable injury should the injunction not be granted.

2

The district court issued a TRO on the basis that KK may suffer irreparable harm to its goodwill, reputation, marketing techniques, and business relations if it were not granted and set the hearing for preliminary injunction for June 19, 2001. The court also provided that limited discovery would be permitted if completed within fourteen days of the judgment granting the TRO.

On June 8, 2001, Allegra filed a motion to dismiss on jurisdictional grounds alleging that it: (1) did not have any employees or customers in Texas, (2) had no offices in Texas, (3) did not conduct business in Texas, and (4) did not have a registered agent in Texas. Furthermore, Allegra had no contact with KK concerning the acquisition of assets, the negotiations between Allegra and Byers occurred in Colorado, and Allegra had no reason to know that KK would suffer an injury in Texas.

Before the June 19, 2002 hearing on the preliminary injunction, the district court declined to hold a full evidentiary hearing and instead permitted parties to argue their positions in court and to introduce evidence they deemed proper. The hearing focused on the issue of personal jurisdiction over the defendant and the court concluded that plaintiff had not demonstrated a "reasonable probability of success" concerning the court's specific or general jurisdiction as to Allegra. Therefore, the court denied the preliminary injunction and granted Allegra's motion to dismiss.

II

On appeal, KK argues that: (1) the district court erred in employing a preponderance of the evidence standard to resolve Allegra's motion to dismiss while there was a pending motion for preliminary injunction when there had been neither a full opportunity for discovery by either of the parties nor a full evidentiary hearing, (2) instead, the district court should have applied a *prima facie* standard adopted by our court in *Union Carbide v. UGI Corporation*, 731 F.2d 1186 (1984), (3) should this court determine that the preponderance standard was correctly applied by the district

3

court, the case should be remanded for a full and proper hearing on jurisdiction, and (4) the court improperly considered and resolved factual issues relevant to KK's claims.

Furthermore, KK contends that it made a sufficient showing of proof to support the court's jurisdiction over Allegra and no tes that specific jurisdiction exists because: (1) KK alleged that Allegra tortiously interfered with a contract signed in Texas, performed in Texas and governed by Texas law and (2) any effects suffered from the alleged tortious interference would be felt in Texas.

Allegra, however, contends that our circuit has changed the burden of proof applied when a motion to dismiss is filed while there is a pending a motion for a preliminary injunction and adopted the approach taken by the Second Circuit in which the proponent of jurisdiction is required to "adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464 (5th Cir. 1985), *citing Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.2d 56,58-59 (2nd Cir. 1981). Furthermore, Allegra argues that the court held a "full evidentiary hearing" and urges that in applying the test laid out in *Visual Sciences*, when a district court conducts an evidentiary hearing on jurisdictional issues, the plaintiff's burden is raised from a *prima facie* standard to that of a preponderance of the evidence.

III.

Absent any dispute as to the relevant facts, this court's review of the district court's dismissal for want of personal jurisdiction is conducted *de novo*. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d. 208, 214 (5th Cir. 2001); *Wilson* v. *Belin*, 20 F.3d 644, 647 (5th Cir. 1994); and *Kelvin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). When alleged jurisdictional facts are disputed, all factual conflicts are resolved in favor of the part y seeking to invoke the court's

jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5ᵗʰ Cir. 1990). While plaintiff carries the burden of establishing a court's jurisdiction over a nonresident, the standard of proof that must be satisfied depends on whether the district court conducted an evidentiary hearing before its consideration of jurisdictional issues.

## A.

When a district court considers a motion to dismiss, while there is a pending motion for preliminary injunction, without an evidentiary hearing and solely on the basis of affidavits and depositions, the plaintiff's burden is met by the presentation of a *prima facie* case for personal jurisdiction. *DeMelo v. Toche Marine Inc.*, 711 F.2d 1260 (5ᵗʰ Cir. 1983), *citing Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332 (5th Cir. 1981). Similarly, in *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320 (5ᵗʰ Cir. 1996), our court described the burden necessary to establish in personam jurisdiction through an excerpt from its ruling in *Bullion,* 895 F.2d at 217:

> [B]ecause the facts in *Bullion* were disputed and because the district court ruled on defendant Bullion's motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the party seeking to invoke the jurisdiction of the district court, plaintiff Bullion, bore the burden of establishing contacts by the nonresident defendant sufficient to invoke the jurisdiction of the court. . . . In satisfying this burden, Bullion need[ed] only present facts sufficient to constitute a prima facie case of personal jurisdiction.

*See also Enterprise*, 762 F.2d at 471 (explaining that in *Union Carbide* our court acknowledged the principle laid out in *Visual Sciences*, that ordinarily a plaintiff need only make a *prima facie* showing of jurisdiction in the absence of a "full blown hearing on the merits," but in order to succeed on a motion for a preliminary injunction when there is also a pending challenge to jurisdiction, a plaintiff must prove "at least a reasonable probability of success" on the question of jurisdiction. However, our court in *Union Carbide* found that (1) the district court in the case before it *had held an*

*adequate hearing* and (2) the plaintiff had established a *prima facie* case for the court's in personam jurisdiction over defendant)[3]; *Wein Air Alaska v. Brandt*, 195 F.3d 208 (5th Cir. 1999)(noting that when the district court did not hold an evidentiary hearing on the issue of jurisdiction, plaintiff need only establish a *prima facie* case), *Wilson,* 20 F.3d at 648; *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990); and *D.J. Investments, Inc.* v. *Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542 (5th Cir. 1985)(noting that proof by preponderance of the evidence is not required when determining whether personal jurisdiction exists).

However, in *Travelers Indemnity Co. v. Calvert Fire Insurance Co.*, 798 F.2d 826 (5th Cir. 1986) our court acknowledged that with regard to the plaintiff's burden of proof responding to a motion to dismiss for lack of jurisdiction, "[e]ventually . . . the plaintiff must establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial."[4]

B.

This court has never explicitly laid out the criteria necessary to constitute a "full evidentiary hearing." However, in *Data Disc, Inc., v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir. 1977), the court explained that:

> [I]f the court determines that it will only receive affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and

---

[3] Although our court in *Union Carbide* acknowledged the test laid out in *Visual Science*, it applied a *prima facie* standard even though it held there had been a sufficient hearing before the district court.

[4] *See also Demelo v. Trohe Marine, Inc*. 811 F.2d 1260, 1270-71 & n.12 (5th Cir. 1983), *citing Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

supporting materials. Thus a plaintiff could not meet a burden of proof requiring a preponderance of the evidence without going beyond the written materials.

In *Felch,* 92 F.3d at 326 n. 17, this court rejected plaintiff's claim that "an evidentiary hearing was not held because no evidence was actually presented," in part because that the transcript revealed that on several occasions the court had opened the door to the presentation of evidence.

In the case at bar, the district court convened a "hearing" to debate the issues of personal jurisdiction during which it heard arguments from counsel on several issues and accepted deposition testimony and other documents into the record. However, the court did not entertain any testimony from witnesses.[5] As described in *Data Disc, Inc.,* then, the court relied on "affidavits plus discovery materials."

By limiting the amount of discovery that could be achieved before the hearing and refusing to accept testimony of witnesses at the hearing, the district court did not hold a "full evidentiary hearing" and erred in: (1) requiring plaintiff to satisfy the preponderance of the evidence standard to establish the court's personal jurisdiction over defendant and (2) resolving factual issues concerning the merits of plaintiff's cause of action. Plaintiff should have been required only to prove a prima facie case of jurisdiction. Uncontroverted allegations in plaintiff's complaint should have been taken as true and conflicts between facts in the parties' affidavits should have been resolved in plaintiff's favor for purposes of determining whether a prima facie case for jurisdiction existed. *D.J. Investments, Inc.*, 754 F.2d at 545.

This court now turns to whether plaintiff satisfied the *prima facie* burden of proof to establish

---

[5] The transcript from the preliminary injunction hearing indicates that Mr. Gerhardt, president of Allegra, was present to testify on the day of the hearing, but the court explained that his testimony was not necessary (Tr. 97).

jurisdiction over the defendant.

IV.

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state and (2) the exercise of jurisdiction over the defendant satisfies the "traditional notions of fair play and substantial justice." *Asahi Metal Indus. v. Superior Court of California*, 480 U.S. 102, 173 (1987); *Command-Aire Co. v. Ontario Mechanical Sales & Serv.*, Inc., 963 F.2d 90 (5th Cir. 1992). Minimum contacts may give rise to specific or general jurisdiction. *Alpine View Co.* 205 F.3d at 214-215.

Courts are permitted to exercise specific jurisdiction over a nonresident when the claim asserted by plaintiff against defendant arises out of or relates to his contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 413 & n. 8 (1984). To possess general jurisdiction, there must be proof of "systematic and continuous" activities by the defendant in the forum state. *Helicopteros,* 466 U.S. at 414, n.9.

A.

Furthermore, it is the well settled law of this circuit that a single act by the defendant directed at the forum state can be enough to confer specific personal jurisdiction if that act gives rise to plaintiff's cause of action. *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F. 3d 415, 419 (5th Cir. 1993), *citing Ham v. La Cienega Music Co.*, 4 F.3d 413, 415-16 (5th Cir. 1993); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990); *Bullion*, 895 F.2d at 216; *Wein*, 195 F.3d at 211. When the transaction being sued on is unrelated to the defendant's contacts with the forum state, then the court must determine whether the nonresident defendant has sufficient "continuous and

8

systematic contacts" with the forum state to confer general jurisdiction. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 n. 10 (5th Cir. 1993), *citing Helicopteros*, 466 U.S. at 414.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court upheld the specific jurisdiction of a California court over Florida defendants based on the allegedly libelous *effect* of their Florida conduct in California. Specifically, the Court held that jurisdiction over the nonresident defendants wa*s* proper because their "intentional conduct in Florida [was] calculated to cause injury to respondent in California." While *Calder* dealt with the intentional tort of libel, this court has applied the "effects test" to cases of other genre. For example, in *Panda Brandywine Co. v. Potomac Electric Power Co*, 253 F.3d 865 (5th Cir. 2001) our court employed the "effects test" to a factual scenario concerning tortious interference with contract. *See also Allred v. Moore & Peterson*, 117 F.3d 278, 286-287 (5th Cir. 1997); *Guidry v. United States Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999)(acknowledging that the court had applied the *Calder* "effects test" to intentional business torts).

Since the decision in *Calder*, this court has inferred that specific jurisdiction requires more than "one act" with the forum state and explained that the "effects test" is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state, but should be assessed as a *part* of the analysis of the defendant's relevant contacts with the forum state. *Allred*, 117 F.3d at 286. In *Panda Brandywine*, for example, our court held that the *Calder* "effects test" was inappropriate to confer specific jurisdiction over a nonresident defendant in Texas based merely on plaintiff's conclusory allegations of tortious interference of contract and the fact that the nonresident should have *foreseen* that its actions would cause injury in Texas because the underlying contract between the parties was not governed by Texas law, was not to be performed

in Texas, and was unrelated to Texas other than the fortuity that the plaintiffs resided in Texas. *Panda Brandywine,* 253 F.3d at 868.

Furthermore, responding to plaintiff's assertion that the district court erred in *Panda Brandywine* by considering factors other than the effect of the alleged tortious interference in its consideration of specific personal jurisdiction, this court explained that:

> [I]f we were to accept appellant's arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts, and would have to appear in Texas to defend the suit no matter how groundless or frivolous the suit may be.

The instant case is factually different from *Panda Brandywine* in that the franchise agreement is governed by Texas law, the immediate effect of the alleged tortious interference will be felt in Texas, and defendant knew the franchise agreement was governed by Texas law and contained restrictions on the franchisees' ability to transfer assets. Furthermore, the harm caused by Allegra's alleged tortious interference is specifically directed at KK, a Texas Corporation. If proven, the interference would effect trade secrets, customers, and ultimately revenue of KK and any financial lost to KK would obviously be incurred in Texas. Resolving these factual issues in favor of plaintiff establishes a prima facie case of specific jurisdiction.

Furthermore, the Supreme Court in *Calder* clearly held that if intentional conduct is intended to cause injury in a specific state, that is sufficient to give specific jurisdiction to the courts of that state. Here, KK's cause of action stems from the alleged wrongful acts of Allegra and it is superfluous and unnecessary to examine the frequency or sufficiency of other connections between the nonresident defendant and the forum state since that analysis would be more appropriate for general jurisdiction.

10

The record does not support systematic and continuous contacts sufficient to confer general jurisdiction on the district court.

B.

As laid out by the Supreme Court in *Asahi Metal Indus. Co.*, 480 U.S. at 115, in determining whether the exercise of specific jurisdiction over a nonresident defendant would "offend the traditional notions of fair play and substantial justice," this court should consider:

> the burden on the defendant, the interest of the forum state, and the plaintiff's interest in obtaining relief. [The court] must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

The court concludes that the burden imposed on Allegra in defending this suit in Texas does not "offend notions of fair play and substantial justice." Knowing that the franchise agreement between the Byers and KK was formed in Texas and governed by Texas law, Allegra should have reasonably anticipated being haled into Texas courts to defend any allegations of tortious interference with that contract. Furthermore, the burden imposed on Allegra in defending this suit in Texas is minimal as: (1) the president and its corporate representative have traveled to Texas and communicated by phone with individuals in Texas on behalf of an unrelated entity [6] and (2) the proximity of Texas and Colorado presents little burden for the purpose of litigation. Moreover, as KK has allegedly been damaged in Texas from the breach of a contract created there, and because the dispute involves a corporation whose principal place of business is in Texas, that state has a "significant interest in redressing injuries that actually occur within the state." *Keeton v. Hustler Magazine*, 465 U.S. 770 (1984).

---

[6] 1 R 213, 215.

Resolving the conflicts in a light most favorable to plaintiff, there is no overwhelming burden on Allegra that outweighs that legitimate interest of plaintiff and the forum state. For these reasons, we conclude that assertion of jurisdiction over Allegra is fair and reasonable.

C.

In the case at bar, the district court made the following factual findings: (1) although Mr. Gerhardt traveled to Texas many times, it was on behalf of another corporation and insufficient to confer general personal jurisdiction over Allegra, (2) while plaintiff contended that it suffered harm in Texas from Allegra's use of KK's telephone number, customer files, customer lists, good-will, software and pricing information in Colorado and from Allegra's interference with its contract between KK and the Byers, it was insufficient to confer specific jurisdiction over Allegra because the evidence did not indicate that Allegra had acted intentionally or otherwise purposefully directed acts towards Texas, (3) any loss sustained was in Colorado where the customers live and transact business, and (4) KK had not persuaded the court that the elements of tortious interference were satisfied including, the existence of a contract subject to interference, a willful and intentional act of interference, and actual damages or loss because the evidence showed that Byers breached the agreement with plaintiff before negotiating with the Allegra, there was no evidence of "active persuasion" on the part of the Allegra and had Byers not sold the assets to Allegra and the public, the franchise would have nevertheless closed. In finding no specific jurisdiction, the district court, in essence, held that the KK did not have a tortious interference with contract claim. This is tantamount to a finding on the merits and without a full trial. Moreover, the district court found that any loss sustained was in Colorado when in actuality, the loss sustained to KK would be at its principle place of business in Texas.

12

Without a full evidentiary hearing and the chance to present testimony and test witnesses' credibility, the district court erred in resolving factual issues against the plaintiff and denying specific personal jurisdiction. It is the ruling of this court that KK has established a *prima facie* case of specific jurisdiction.

Accordingly, the judgments of the district court denying Kwik-Kopy's Motion for Contempt and Motion for Preliminary Injunction are **VACATED** [7].

V.

For the foregoing reasons, the grant of Allegra's motion to dismiss in favor of defendants against plaintiff is **REVERSED** and this case is **REMANDED** to the district court for further proceedings consistent with this opinion.

---

[7] The court notes that this decision in no way affects plaintiff's right to proceed against the Byers as: (1) the Byers were not a part of Allegra's Motion to Dismiss, (2) the district court's "final judgment" rendered in connection with Allegra's Motion to Dismiss did not encompass the Byers, and (3) it was noted at the hearing on KK's preliminary injunction that plaintiff did not intend to proceed against the Byers at that time because the Byers have filed for bankruptcy (Tr. 333).