# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2022

Lyle W. Cayce
Clerk

No. 21-20383

Tutus, L.L.C,

*Plaintiff—Appellant*,

*versus*

JLG Industries, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-4231

Before Richman, *Chief Judge*, and Costa and Ho, *Circuit Judges*.
Per Curiam:*

Tutus, LLC sued JLG Industries, Inc. in Texas for business disparagement and tortious interference. The district court granted JLG's motion to dismiss for lack of personal jurisdiction. We affirm.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20383

## I.

Tutus is a Texas company that manufactures safety equipment for walking platforms. In 2014, Forrest Hester, the sole owner of Tutus, invented an aerial safety netting system called the "Dropped Object Prevention System" ("DOPS"). DOPS is designed for use on mobile elevated work platforms ("MEWPs"), of which JLG—a Pennsylvania company—is a manufacturer.

Under regulations promulgated by the American National Standards Institute, JLG must provide written approval before DOPS can be used with its MEWPs. Without that approval, Tutus is effectively barred from selling DOPS to customers who use JLG's platforms.

Tutus alleges that JLG refused to grant the necessary approval, despite repeated assurances that it would do so. As a result, many prospective customers backed out of negotiations with Tutus for large-quantity purchases of DOPS. Tutus also claims that JLG spread false rumors about the safety of DOPS across the MEWP industry. And even though DOPS is not patented, Tutus accuses JLG of marketing and selling a copycat product.

Tutus sued JLG in Texas state court for business disparagement and tortious interference with existing or prospective business relations. JLG removed the case to federal court on diversity grounds, then moved to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. The district court adopted the magistrate judge's recommendation that the suit be dismissed for lack of personal jurisdiction and, alternatively, for failure to state a claim as to tortious interference. Tutus now appeals.

## II.

## A.

We review questions of personal jurisdiction de novo. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). Courts may exercise personal jurisdiction over a nonresident defendant only if "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction . . . does not offend traditional notions of fair play and substantial justice." *Id.* (quotations omitted).

A nonresident defendant's forum contacts may establish either general or specific jurisdiction. *Id.* Tutus relies only on specific jurisdiction, which exists when the nonresident defendant "purposefully direct[s] his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (cleaned up). Jurisdiction requires more than "random, fortuitous, or attenuated contacts [the defendant] makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quotations omitted). It instead must rest on "intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.*

The party invoking the court's jurisdiction bears the burden of proving it. *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022). "Where, as here, the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, that burden requires only that the nonmovant make a *prima facie* showing [of jurisdiction]." *Id.* (quotations omitted). In such cases, we accept the nonmovant's factual allegations as true, but that "does not automatically

mean that a prima facie case for specific jurisdiction has been presented." *Panda Brandywine*, 253 F.3d at 868. We have instead recognized that "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Id.* (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995)). "Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of . . . the forum state." *Id.*

## B.

Tutus alleges myriad Texas-based contacts that ostensibly expose JLG to personal jurisdiction in the state. Because Tutus relies on specific jurisdiction, however, we conduct a claim-specific inquiry and consider only those forum contacts that relate to business disparagement and tortious interference. *See McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Given those claims, we agree with the district court that only two of JLG's alleged forum contacts are relevant to this suit.[1]

First, Tutus alleges that JLG made defamatory statements about DOPS to a representative of United Rentals, one of Tutus's prospective customers. But Tutus does not support this allegation with facts establishing purposeful availment of Texas. In its complaint, Tutus does not explain how the defamatory statements were shared—it asserts only that the statements were "conveyed to a United Rentals representative *centered around* the

---

[1] In *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026 (2021), the Supreme Court rejected the view "that only a strict causal relationship between the defendant's in-state activity and the litigation will do." Despite what Tutus argues in its brief, the district court here did not apply a strict causation standard. Nor do we.

No. 21-20383

ExxonMobil Baytown Chemical Expansion Project in Baytown, Texas." Hester's affidavit is similarly vague and conclusory when it alleges that the statements were "conveyed by JLG representatives to a United Rentals representative at the ExxonMobil Baytown Chemical Expansion Project in Baytown, Texas."

It is unclear to us whether the allegedly defamatory statements were made *in* Texas or whether, as the complaint suggests, the statements were simply made to a United Rentals representative *based* in the state. This distinction is important because it is the *defendant's* forum contacts that matter for purposes of personal jurisdiction—not the forum contacts of persons with whom the defendant interacts. *Walden*, 571 U.S. at 286. What's more, Tutus provides no details on who initiated the communication between JLG and United Rentals—a relevant consideration under our case law. *Compare Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 334 (5th Cir. 1982) (personal jurisdiction over nonresident defendant who initiated phone call to forum state), *with Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994) (no personal jurisdiction over nonresident defendants who "merely answered one uninitiated and unsolicited phone call").[2]

The same problems afflict the second relevant contact alleged by Tutus: JLG's disparagement of "Tutus and the D.O.P.S. product by spreading false rumors among the MEWP's industry, including, upon information and belief, rumors related to the D.O.P.S. product to Exxon/Mobile at the Gulf Coast Growth Ventures construction near Corpus

---

[2] In the proceedings below, Tutus did not request jurisdictional discovery or leave to amend its complaint. Nor does Tutus request such relief on appeal. We therefore do not consider whether such relief would have been appropriate here.

No. 21-20383

Christi, Texas." Again, Tutus offers no specific facts establishing that JLG targeted Texas with its allegedly defamatory statements.[3]

Because Tutus has failed to prove that JLG purposefully availed itself of Texas through suit-related conduct, the district court correctly dismissed this case for lack of personal jurisdiction. We accordingly do not address the district court's alternative holding that Tutus failed to state a claim for tortious interference.

Affirmed.

---

[3] Aside from the defamatory statements, Tutus believes that there is jurisdiction for its tortious interference claim because JLG allegedly markets and sells a copycat DOPS product in Texas. But this allegation is unrelated to the tortious interference cause of action, which requires either interference with an existing contract or conduct that is independently unlawful and obstructs a prospective business relationship. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017); *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).