**ROXCO, LTD. and Nobel Insurance Company, Plaintiffs,**

**v.**

**HARRIS SPECIALTY CHEMICALS, INC. and Senergy, a Division of Harris Specialty Chemicals, Inc., Defendants.**

**No. Civ.A. 3:98CV613WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 15, 2000.

Stephen E. Gardner, Young, Williams, Henderson & Fuselier, Jackson, MS, for plaintiffs.

David L. Ayers, Kathleen P. Morgan, Watkins & Eager, Jackson, MS, for defendants.

## ORDER GRANTING MOTION TO DISMISS AND MOTION TO TRANSFER

WINGATE, District Judge.

Before the court is defendant Harris Specialty Chemicals' ("Harris" or "defendant") Motion to Dismiss this litigation on the ground that this court lacks personal jurisdiction over the defendants. Defendant submits this motion under Fed. R.Civ.P. 12(b)(2)[1]. Plaintiffs oppose the motion. After having reviewed the motion, briefs, and authorities provided by both sides, this court is persuaded to grant the motion.

### I. BACKGROUND.

This action originally was filed in the Circuit Court of Rankin County, Mississippi, on May 21, 1998. Defendants were not served with a Summons and Complaint until September of 1998. On September 23, 1998, defendants removed the Rankin County action to this federal court pursuant to Title 28 U.S.C. § 1332,[2] claiming diversity of citizenship and an amount in controversy greater than $75,000.00.

This dispute has its genesis in a construction project on the Barksdale Air Force Base near Shreveport, Louisiana.[3]

---

1. Fed.R.Civ.P. 12(b)(2) states in pertinent part:

    (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion ... (2) lack of jurisdiction over the person

2. Title 28 U.S.C. § 1332 provides in pertinent part:

    (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

    (1) citizens of different States; ...

3. The following brief summary of facts, taken from defendants' memorandum in support of their motion to dismiss, is not disputed among the parties.

In March, 1995, the United States government, through its contract officers based in Louisiana, awarded plaintiff Roxco, Ltd. ("Roxco" or "plaintiff") the general contract to replace the visiting officers' quarters (known as the Wherry Housing). This contract called for Roxco to construct dozens of two-story units with attached garages.

The government specifications called for the use of an Exterior Insulation and Finish System (known as "EIFS") on the exterior surfaces of the buildings. EIFS features a mixture of specialty materials which are troweled onto a building's exterior surface and allowed to harden into a tough shell. Applied properly, according to the parties, EIFS should prove to be an excellent insulation, protection against weather, while displaying an aesthetic finish.

Roxco decided to subcontract the EIFS work to a local applicator, Exterior–Interior/Choctaw Ventures (Exterior/Interior" or "E/I"), a joint venture between two Shreveport-based concerns.

Harris Specialty Chemicals, Inc. ("Harris") is a major manufacturer and supplier of EIFS. Harris learned of the Barksdale project and endeavored to get its EIFS product, ThoroWall, approved by the government. The government subsequently approved ThoroWall as an acceptable equivalent of the EIFS products specifically approved in the specifications.

The parties agree that proper application of EIFS is important. Harris, therefore, requires that all applicators who use its product to be certified by it before beginning work in the field. The government also required through its specifications that the EIFS applicator be approved by the manufacturer.

Harris provided limited technical advice regarding the use of ThoroWall to E/I personnel in late 1995. The session was conducted at the Barksdale Air Force Base in Louisiana by Harris employee David Smith from Florida. On May 23, 1995, Harris wrote Roxco at its job site in Louisiana, enclosing data regarding its ThoroWall system and a certificate acknowledging that E/I was a certified applicator of ThoroWall.

E/I began performing its subcontract no later that the early fall of 1995. E/I never purchased any EIFS products directly from Harris. Harris sold its products only to licensed independent distributors. Harris' distributors for the Barksdale project were Darragh, an Arkansas outfit, and Kohler, which was based in Louisiana. The EIFS products were shipped from Harris' (and later Senergy's, which was purchased by Harris) various plants. None of these plants is located in Mississippi.

Roxco allegedly experienced a number of problems with E/I from virtually the beginning of the project. Supposedly, these problems included a high employee turnover, E/I's failure to maintain proper books and records, E/I's failure to pay material-men, etc. So, on March, 14, 1997, Roxco terminated E/I. Over the next couple of years, Roxco hired two replacement applicators which also were certified. According to Roxco, the new applicators finished the EIFS work and, in some cases, reworked the EIFS finish improperly installed by E/I. Roxco's own involvement in the project ended at the end of 1998.

Roxco subsequently sued E/I and its surety, Nobel Insurance Company, in court in Louisiana. Roxco settled with Nobel, receiving over $1,000,000 from Nobel in E/I's performance bonds.

On May 21, 1998, Roxco and Nobel sued Harris and Senergy in Rankin County Circuit Court, this lawsuit. As previously stated, the defendants removed the action to this court pursuant to Title 28 U.S.C. § 1332.

At the time this lawsuit was filed, Harris was incorporated in Delaware and maintained its principal place of business in Florida. Senergy, Inc., was a competitor of Harris until November, 1995, when Har-

ris acquired Senergy. Senergy thereafter became a division of Harris. After the time this lawsuit was filed, Senergy became a Rhode Island corporation with its principal place of business in Florida. Senergy had no contact with the Wherry Housing project at Barksdale prior to its acquisition by Harris.

. Neither Harris nor Senergy is, or has ever been, qualified to do business in the State of Mississippi. Neither Harris nor Senergy has ever maintained an office of business in the State of Mississippi. Neither company has employees in Mississippi. Neither has, or has ever had, a telephone listing in Mississippi, maintained bank accounts in Mississippi, or owned or leased any real, personal or tangible property in Mississippi.

Both Harris and Senergy market their products through independent distributors. These distributors sell directly to the ultimate users of the products; these distributors are also paid by the ultimate users. None of these distributors is located in Mississippi. As noted above, the two distributors used by Harris and Senergy for the Barksdale project were located in Arkansas and Louisiana.

Harris and Senergy employees make sporadic visits to Mississippi to view the application of defendants' products. These visits were merely transient visits made by out-of-state employees.

Harris and Senergy's contacts with Mississippi in connection to the Barksdale project were as follows: A Harris representative sent two letters to Roxco's Brandon, Mississippi, office during the three and one-half years the Barksdale project was ongoing. In addition, a Harris representative may have placed one or two telephone calls to Roxco's Brandon, Mississippi, office during this same time span. No Harris or Senergy employee is known to have visited Mississippi in connection with the Barksdale project.

Harris and Senergy's had substantial contacts with the State of Louisiana. Har-

ris offered training to E/I's employees in Louisiana. Harris issued its certificate regarding E/I to Roxco in Louisiana. Harris and Senergy shipped their products to the job site in Louisiana. Harris and Senergy representatives conducted inspections of the application of the EIFS in Louisiana. Harris and Senergy representatives engaged in a substantial volume of correspondence with Roxco representatives based in Louisiana regarding E/I's performance, the inspections by Harris and Senergy, and E/I's failure to pay for materials. Harris and Senergy ultimately warranties their EIFS products. These warranties ran in favor of the United States government (not Roxco) and were delivered to the government in Louisiana.

After the case was removed to federal court, defendants pursued the instant motion to dismiss for lack of personal jurisdiction that is before the court at this time.

## II. ANALYSIS.

■ "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). The plaintiff must show that jurisdiction exists under Mississippi's long-arm statute and that the exercise of jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. *Wilson v. Belin*, 20 F.3d 644, 646–47 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994).

### A. Mississippi's Long–Arm Statute.

Mississippi provides for jurisdiction over nonresident defendants by statute as follows:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to

be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had as is provided by the Mississippi Rules of Civil Procedure.

Miss.Code Ann. ¶ 13–3–57 (Supp.1998).

Thus, In order to exercise jurisdiction over the defendants, the court must find that: (1) the defendants herein entered into a contract with Roxco to be performed in whole or in part in Mississippi; or (2) the defendants committed a tort, in whole or in part, against Roxco in Mississippi; or (3) the defendants were "doing business" in Mississippi. *Sorrells v. R. & R. Custom Coach Works, Inc.,* 636 So.2d 668, 671 (Miss.1994).

### 1. Jurisdiction Under the Contract Prong.

Roxco's complaint does not allege that any of its causes of action are based on a contract with the defendants. Roxco does not allege that a contract exists between it and either defendant. The defendants sold their products to the distributors, who in turn contracted with E/I, Roxco's subcontractor. Thus, plaintiffs have not come forth with any evidence that a contract existed between either defendant and Roxco.

Even if the court were to find that a contract did exist between the plaintiff and the defendants, the court still would have to find that defendants had entered contractual obligations "to be performed in whole or in part" in Mississippi. But, plaintiffs' proof on this point, too, is lacking since neither defendant took, or was required to take, any action in Mississippi. Harris's training of E/I's employees, its

certification of E/I, and Harris and Senergy's limited inspection of the EIFS at the Wherry Housing project took place in Louisiana or Arkansas. Plaintiffs, therefore, in their effort to show this court's personal jurisdiction over the defendants, are unable to enlist the contract prong of Mississippi's Long–Arm Statute to serve their argument.

### 2. Jurisdiction Under the Tort Prong.

The tort prong of Mississippi Long–Arm Statute is satisfied only when a tort, or any part of it, is committed against the plaintiff in Mississippi. *Sorrells v. R & R Custom Coach Works, Inc.,* 636 So.2d 668, 671 (Miss.1994). Plaintiffs here have the burden to establish that the defendant committed a tort in whole or in part against them in Mississippi. *Wilson v. Belin,* 20 F.3d 644, 646–47 (5th Cir.1994).

■ Although Roxco alleges a variety of causes of action, none of the defendants' allegedly tortious conduct took place in Mississippi. Harris' allegedly misleading Certification of Completion for E/I was mailed to Roxco's Louisiana address. According to Roxco's president, Roxco relied on the certificate by allowing E/I to perform its work in Louisiana. Harris' training of E/I employees took place in Louisiana. Harris and Senergy's allegedly negligent inspections took place in Louisiana; they were obliged to furnish the federal government in Louisiana warranties covering EIFS on Louisiana property. Furthermore, the bulk of the parties' correspondence and communications concerning the inspections, warranties and payments for materials occurred between the defendants and Roxco employees working in Roxco's Louisiana job site.

Plaintiffs respond to these facts by arguing that the injury portion of the tort allegations listed in the complaint occurred in Mississippi, the domicile of Roxco, Ltd. But, as defendants correctly point out, the Fifth Circuit has carefully distinguished

between "damages" and "injury" in interpreting Mississippi's Long–Arm Statute. "The term 'injury' commonly denotes the invasion of any legally protected interest of another" whereas "the term 'damages' is understood to mean the harm, detriment or loss sustained by reason of an injury." *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 & n. 2 (5th Cir.1996). "[C]onsequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Id.* at 753. *See also Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 619 (5th Cir.1989) ("We have held that with respect to Mississippi's long-arm statute a tort occurs where and when the actual injury takes place, not at the place of the economic consequences of the injury.")

Roxco here merely alleges that it suffered some form of economic consequence in Mississippi as a result of an alleged tort caused by defendants, albeit that the bulk of the offensive actions constituting this alleged tort were committed in Louisiana, not Mississippi. Since Roxco is merely describing the alleged consequences of an injury, under the dictates of *Jobe v. ATR Marketing, Inc.*, Roxco cannot establish personal jurisdiction under the tort prong of Mississippi's Long–Arm Statute.

### 3. Jurisdiction Under the "Doing Business" Prong.

■ Finally the undisputed facts alleged by the two parties in their submissions to the court show that Roxco cannot establish personal jurisdiction under the "doing business" prong of the Mississippi Long–Arm Statute. Defendants highlight for the court the recent Mississippi Court of Appeals decision of *Kekko v. K & B Louisiana Corp.*, 716 So.2d 682 (Miss.App. 1998), which set forth the test for whether a nonresident corporation is "doing business" in Mississippi, namely: (1) whether the defendant did some act or consummated a transaction in Mississippi; and (2) whether the assumption of jurisdiction by this state would offend traditional notions of fair play and substantial justice. *Id.* at 683.

The second prong of the test incorporates the federal "minimum contacts" analysis:

> The second part of the test must be considered in light of the amount and type of activity in the state, the relative convenience of the parties, the benefits and protection of Mississippi's laws afforded the parties and the equities of the situation.

*Id.* at 683.

■ As argued by the defendants (and left undisputed by plaintiffs), none of the defendants' limited contacts with Mississippi can be characterized as "doing business" under Section 13–3–57. The defendants do not sell products directly to Mississippi customers. They maintain no bank account; employ no residents; own no property, real or personal, in Mississippi; and lease no property in this State. They do not maintain telephone listings in Mississippi. Although out-of-state employees occasionally visit Mississippi to view the application of the defendants' products, such transient visits do not constitute "doing business" under the Statute. *See Mississippi Chemical Corp. v. Vulcan–Cincinnati, Inc.*, 224 F.Supp. 11, 13 (S.D.Miss.1963), *aff'd*, 338 F.2d 662 (5th Cir.1964) (defendant not "doing business" in Mississippi even though defendant performed inspection of an gave technical advice in Mississippi concerning Mississippi plant which collapsed).

Likewise, defendants' sporadic contacts with Mississippi regarding the Barksdale project do not constitute "doing business" in Mississippi under the Long–Arm Statute. Neither the two letters mailed to Roxco's Brandon office, nor the telephone contacts to the same constitute the type of consistent business contacts contemplated as "doing business" in the state to warrant personal jurisdiction. *See Peterson v. Test Int'l, E.C.*, 904 F.Supp. 574, 579 (S.D.Miss.

1995) (merely mailing proposed contract to Mississippi resident does not satisfy "doing business" prong; nor do mere negotiations for employment by a nonresident defendant from an out-of-state location); *Martin & Martin v. Jones*, 616 F.Supp. 339 (S.D.Miss.1985); *Paul v. Int'l Precious Metals Corp.*, 613 F.Supp. 174, 176 (S.D.Miss.1985) (calls to and from forum state insufficient to establish long-arm jurisdiction).

### B. Due Process Considerations and the Exercise of Jurisdiction over the Defendants.

■ This court is convinced that this court's exercise of personal jurisdiction over the defendants would be an affront to due process considerations for the very same reasons that the plaintiffs cannot persuade this court to exercise personal jurisdiction under the Mississippi Long–Arm Statute. "The exercise of personal jurisdiction over a nonresident defendant comports with due process principles only when two requirements are met: First, the nonresident defendant must have 'purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with that forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 285 (5th Cir.1997) (citations omitted). Secondly, the exercise of personal jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice." *Id.*

■ The Fifth Circuit has further refined the "minimum contacts" inquiry:

The "minimum contacts" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. Specific jurisdiction is appropriate when the non-resident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts are both "continuous and systematic."

*Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 nn. 8–9 (1984)).

### 1. Defendants' Contacts within Mississippi and General Jurisdiction.

The court can only exercise general jurisdiction as afforded under the Fifth Circuit's Wilson decision if the defendants' actions in Mississippi constitute "continuous and systematic general business contacts." *Helicopteros Nacionales*, 104 S.Ct. at 1873. The undisputed facts show that Harris and Senergy do not maintain (and have never maintained) "continuous and systematic" contacts with the state of Mississippi. As stated above, Harris was incorporated in the State of Delaware and Senergy was incorporated in the State of Rhode Island at the time the lawsuit was filed. Both corporations maintained their principal place of business in Florida. Neither Harris nor Senergy has ever been qualified to do business in the State of Mississippi. Neither company has maintained an office or place of business in Mississippi. Neither has ever had employees based in Mississippi. Neither has or has ever had telephone listings, bank accounts, or owned any real, personal or tangible property in Mississippi. Neither company enters into direct contracts or sale agreements with Mississippi residents.

At most, the facts show that Harris and Senergy possibly make sporadic visits to Mississippi to review or observe the application of their products in some Mississippi jobs. Even if so, these visits have only been described as brief and transient. As such, the court holds that general jurisdiction does not exist to the defendants.

### 2. Defendants' Contacts with Mississippi over the Barksdale Project and Specific Jurisdiction.

As defendants point out in their brief, the Fifth Circuit has stated the test for specific jurisdiction as follows:

When an action "arises out of" a defendant's contacts with the forum, a "relationship among the defendants, the forum, and the litigation" is the essential foundation of in personam jurisdiction." This type of jurisdiction in which the suit arises out of or is related to the defendant's contacts with the forum is commonly referred to as "specific jurisdiction."

There must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the protection of its laws. The "purposeful availment" element ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous" or "attenuated" contacts, or the unilateral activity of another party or a third person.

*Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 337 (5th Cir.1999).

Whether viewed one at a time or in the aggregate, the defendants' sparse contacts with Mississippi pertaining to the Barksdale project do not show that the defendants "purposely availed" themselves of the privilege of conducting business in Mississippi. The two letters and possible few phone calls by defendants to Roxco's Brandon office in regards to the Barksdale project listed in the undisputed facts do not create specific jurisdiction. *See Felch v. Transportes Lar–Mex,* 92 F.3d 320 (5th Cir.1996) ("[s]imply communicating with a Texas resident is not purposeful availment of the privilege of conducting activities in Texas such as to invoke the benefits and protections of Texas law."), *Paul v. Int'l Precious Metals Corp.,* 613 F.Supp. 174 (S.D.Miss.1985).

### C. Discretionary Transfer of Venue Under Title 28 U.S.C. §§ 1404(a) and 1406.

In their memorandum in support of their response to defendants' motion to dismiss, plaintiffs Roxco and Nobel Insurance argue in the alternative that this court should transfer this litigation, even in the absence of personal jurisdiction, to the United States District Court for the Western District of Louisiana under Title 28 U.S.C. §§ 1404(a) and 1406.

Section 1404(a) provides as follows:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1406 states as follows:

The district court of a district in which is filed a case laying·venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

■ The United States Supreme Court states that "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). *See also Bentz v. Recile,* 778 F.2d 1026, 1027 (5th Cir.1985).

Under the discretion allowed by Sections 1404(a) and 1406, this court is persuaded that in the best interests of justice the litigation should be transferred to the United States District Court for the Western District of Louisiana. The court, after having reviewed defendants' arguments proving the abundance of personal jurisdiction on them in Louisiana, is convinced that personal jurisdiction over the litigation lies in that state.

## CONCLUSION

This court finds that it lacks the authority under both the Mississippi Long–Arm Statute (Miss.Code Ann. ¶ 13–3–57 (Supp. 1998)) and under the Due Process clause of the Fourteenth Amendment to the United States Constitution to exercise personal jurisdiction over the defendants in this litigation. Accordingly, this court hereby dismisses this action from its docket and grants a transfer of the lawsuit under Title 28 U.S.C. §§ 1404(a) and 1406 to the United States District Court for the Western District of Louisiana.