# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-SA-01259-SCT

*LYNN FITCH, ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI, EX REL., THE STATE OF MISSISSIPPI AND COMMISSIONER OF REVENUE HERB FRIERSON AND MISSISSIPPI DEPARTMENT OF REVENUE*

*v.*

*WINE EXPRESS INC., BOTTLE DEALS INC. AND GOLD MEDAL WINE CLUB*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/2018 |
| TRIAL JUDGE: | HON. JOHN S. GRANT, III |
| TRIAL COURT ATTORNEYS: | JAMES A. BOBO |
| | DAVID J. CALDWELL |
| | JOEL W. HOWELL, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JAMES A. BOBO |
| |     KRISSY CASEY NOBILE |
| | DAVID J. CALDWELL |
| ATTORNEY FOR APPELLEES: | JOEL W. HOWELL, III |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 02/27/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     The Mississippi Department of Revenue (MDOR) and the Office of the Attorney General of the State of Mississippi  filed suit against Wine Express, Inc., Gold Medal Wine Club, and Bottle Deals, Inc., in the Chancery Court of Rankin County, Mississippi.  The State

sought injunctive relief, disgorgement, monetary relief, attorneys' fees, and punitive damages. Defendants moved for dismissal claiming that Mississippi courts lack personal jurisdiction over Defendants. After a hearing on the matter, the trial court granted Defendants' motion.

¶2. The State appeals. We find that the trial court erred by finding that it lacks personal jurisdiction over the Defendants.

## FACTS AND PROCEDURAL HISTORY

¶3. In early 2017, the Alcohol Beverage Control (ABC) Division of the Mississippi Department of Revenue and the Alcohol and Tobacco Enforcement Division of the Mississippi Attorney General's Office investigated the shipment of wine and other alcoholic beverages into the state. Agents used common online search engines to search the websites of various Internet wine retailers. The investigation revealed that most Internet retailers make it "impossible" to place an order for alcoholic beverages once it is disclosed that the shipment would be to a location in Mississippi. This, however, is not so for the Defendants' websites. In December 2017, the State sued the Defendants for injunctive relief to enforce the provisions of the "Local Option Alcoholic Beverage Control Law." *See* Miss. Code Ann. §§ 67-1-1 to -99 (Rev. 2012).

¶4. Pursuant to this statutory scheme, Mississippi operates under a three-tier system in which the State acts as the wholesaler for alcoholic beverages, meaning Mississippi directly controls the distribution and sale of alcoholic beverages. Miss. Code Ann. § 67-1-41 (Rev. 2012). Each manufacturer ships its alcoholic beverages to a centralized warehouse in

2

Gluckstadt, Mississippi, which is owned by the State. From there, the alcohol is held in bailment by the State until ordered by privately held and permitted retailer package stores. Miss. Code Ann. § 67-1-51 (Supp. 2019) (issuance of permits). Once ordered, alcohol is then shipped by the State to individual package stores for resale to consumers who must purchase the alcohol while on the package store premises. Package store retailers may not ship or deliver alcohol to consumers. Miss. Code Ann. § 67-1-83(1) (Rev. 2012) ("It shall also be unlawful for the holder of any package retailer's permit to sell any alcoholic beverages except by delivery in person to the purchasers at the place of business of the permittee.").

¶5. Mississippi law further provides as follows:

> It shall be unlawful for any person to manufacture, distill, brew, sell, possess, import into this state, export from the state, transport, distribute, warehouse, store, solicit, take order for, bottle, rectify, blend, treat, mix or process any alcoholic beverage except as authorized in this chapter. However, nothing contained herein shall prevent importers, wineries and distillers of alcoholic beverages from storing such alcoholic beverages in private bonded warehouses located within the State of Mississippi for the ultimate use and benefit of the Department of Revenue as provided in § 67-1-41.

Miss. Code Ann. § 67-1-9(1) (Supp. 2019).

> No alcoholic beverage intended for sale or resale shall be imported, shipped or brought into this state for delivery to any person other than as provided in this chapter, or as otherwise provided by law for native wines.

Miss. Code Ann. § 67-1-41(3) (Rev. 2012).

¶6. Section 67-1-51, as noted above, sets forth the various permits that must be obtained from the State in order to engage in the possession, sale, and distribution of alcoholic beverages to adults. The Defendants do not possess any of the permits required by state law.

3

¶7.     In February 2018, the State filed an amended complaint for injunctive relief, disgorgement, monetary relief, attorneys' fees and punitive damages.[1]  The State alleged that through the Defendants' interactive, commercial websites, they sold and directed the shipment of thousands of bottles of alcohol into Mississippi.  The State alleged that the damages are the unpaid sales taxes and excise taxes due in relation to the taxable illegal transaction and the unrealized wholesale markup.

¶8.     The Defendants separately filed motions to dismiss based on a lack of personal jurisdiction under Mississippi Rule of Civil Procedure 12(b)(2), but the grounds for dismissal in each motion were the same.  The Defendants stated that they are incorporated in New York or California with no physical presence or place of business in Mississippi.  Further, all the purchases made by the buyers were made online.  In each transaction, the Defendants received, processed, finalized, and completed the sales orders in their places of business in New York or California.  And the Defendants contend that alcohol purchases by consumers in Mississippi were made F.O.B. (Free on Board), and title to the goods passed to the buyers at the time and place that the goods left the Defendants' respective premises located outside the state of Mississippi.[2]

---

[1] The State filed a motion to file a second amended complaint on July 30, 2018; but that motion was noticed for hearing on the same date that the court concluded it did not have personal jurisdiction.  Therefore, it did not issue a ruling on the motion to amend.

[2] Gold Medal's sales contracts provide in pertinent part as follows:

Title to, and ownership of, all wine passes from seller to buyer in the State of California, and buyer takes all responsibility for shipping the wine from California to his or her home state. . . . .  The buyer is solely responsible for the shipment of wine and other goods purchased and for determining the

4

¶9.     The State opposed the motions, arguing that the Defendants are operators of unlicensed virtual liquor stores in Mississippi. The State argued that the Defendants had intentionally decided to direct activities in Mississippi and to allow orders to be placed through their highly interactive websites.

¶10.    Before the trial court ruled on the matter, the parties had conducted jurisdiction-related discovery. According to the State, the discovery revealed that the Defendants had sold and directed the shipment of thousands of bottles of alcoholic beverages into the State, profiting more than $200,000.

¶11.    On August 23, 2018, the trial court held a hearing on the State's motion to amend and on the Defendants' motions for dismissal. The trial court entered an order granting the Defendants' motion to dismiss for lack of personal jurisdiction.

¶12.    The trial court reasoned as follows:

---

legality and tax/duty consequence of having the wine and other goods shipped to the applicable destination.

Bottle Deal's sales contracts likewise provide as follows:

You certify that it is legal to ship alcohol into the state and county of the intended recipient and the recipient of this shipment is at least 21 years of age and may legally posses alcohol. You acknowledge that title for your purchase transfers from our Syosset warehouse in the State of New York. We will then arrange for a common carrier shipment on your behalf.

Wine Express sold its alcoholic beverages subject to similar terms:

All alcoholic beverages are sold in Westchester, New York and title passes to the buyer in New York. We make no representation to the legal rights of anyone to ship or import wines into any state outside of New York. The buyer is solely responsible for shipment of alcoholic beverage products.

5

This case is about the Uniform Commercial Code . . . . The [c]ourt finds in this particular case that title to all these goods passed outside the state of Mississippi. . . . [U]nder these transactions, the buyers took full responsibility for the shipment of the alcohol unto themselves from the point of sale in New York and California. . . .

. . . .

Now, yes, [the Defendants] probably did it in contravention of Mississippi state law, and they're probably responsible for it, but the buyer is solely responsible for the shipment of wine under these contracts.

¶13. The State appeals from that ruling. The only question before this Court is whether the trial court's dismissal of the State's case for lack of personal jurisdiction over the Defendants was proper. As will be explained, we find that the trial court erred.

**LAW AND ANALYSIS**

¶14. "Jurisdictional issues are reviewed pursuant to a de novo standard of review." *Joshua Props., LLC v. D1 Sports Holdings, LLC*, 130 So. 3d 1089, 1092 (Miss. 2014) (citing *McDaniel v. Ritter*, 556 So. 2d 303, 308 (Miss. 1989)). Personal jurisdiction over a nonresident defendant is determined under a two-part inquiry. *Id.* (citing *Estate of Jones v. Phillips ex rel. Phillips*, 992 So. 2d 1131, 1137 (Miss. 2008)). The first inquiry is whether Mississippi's long-arm statute confers personal jurisdiction over the nonresident defendant. *McDaniel*, 556 So. 2d at 307 (citing Miss. Code Ann. § 13-3-57 (Supp. 1989)). If so, the second inquiry is whether personal jurisdiction comports with constitutional due process. *Id.* at 308.

**I.    Mississippi's Long-Arm Statute**

¶15. Mississippi's long-arm statute provides in pertinent part as follows:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57 (Rev. 2019).

¶16. The statute comprises three types of conduct: the contract component, the tort component, and the doing-business component. Only one need be met for purposes of the statute. *Sorrells v. R & R Custom Coach Works, Inc.*, 636 So. 2d 668, 671 (Miss. 1994). While the State maintains that all three are met in this instance, we limit our discussion to the doing-business component.

¶17. The State contends that the Defendants satisfy this component because each Defendant operated and maintained an interactive commercial website through which Mississippi consumers could purchase alcohol, calculate shipping costs using Mississippi zip codes, and create accounts.

¶18. The Defendants maintain that they do not meet this component because they do not do business in Mississippi as contemplated by the statute. They have no physical presence in the state, no business permits, no agents for service of process, and they do not advertise in Mississippi. The Defendants further contend that the sales transactions did not occur in Mississippi but were sold at their brick-and-mortar stores in New York and California through their websites. And the Defendants contend that in each transaction, they sold the

7

alcohol F.O.B.[3] and title passed to the buyers at the time and place the goods left the Defendants' premises.

¶19. The Defendants rely on the rulings in **Peterson v. Test International, E.C.**, 904 F. Supp. 574, 579 (S.D. Miss. 1995), and **Roxco, Ltd. v. Harris Specialty Chemicals, Inc.**, 133 F. Supp. 2d 911, 916-17 (S.D. Miss. 2000), in which the federal district court found that the defendant's conduct did not satisfy the "doing business" component when it merely mailed letters or proposed contracts to Mississippi residents.

¶20. We find that the circumstances in those cases are distinguishable from the circumstances here. *See McDaniel*, 556 So. 2d at 308 ("Determinations of whether a defendant is 'doing business' within the state proceeds on an *ad hoc* basis." (citing **Miss Cal 204, Ltd. v. Upchurch**, 465 So. 2d 326, 330 (Miss. 1985))).

¶21. Section 13-3-57 is clear. By its plain terms, the statute applies to any corporation or person "who shall do any business or perform any character of work or service in this state . . . ." Miss. Code Ann. § 13-3-57.

¶22. Each Defendant in this instances operates an interactive, commercial website through which Mississippi customers can purchase alcoholic beverages. The purchases are made using the customer's credit card. Customers receive email confirmation of their orders, as

---

[3] F.O.B. means "free on board" and is a term of art defined by the Uniform Commercial Code. U.C.C. § 2-319(1) (Am. Law Inst. & Unif. Law Comm'n), Westlaw (database undated Sept. 2017). The UCC provides that "when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this article . . . and bear the expense and risk of putting them into the possession of the carrier[.]" U.C.C. § 2-319(1)(a) (Am. Law Inst. & Unif. Law Comm'n), Westlaw (database undated Sept. 2017).

well as notifications of special offers. Shipping costs are charged to the customer and are calculated using the customer's zip code.

¶23. According to the record, from December 2014 to January 2018, Gold Medal had transacted with 225 Mississippi residents approximately 2,556 times, making approximately $181,821 in sales. From the year 2015 to 2017, Wine Express transacted with 69 Mississippi residents approximately 189 times, for approximately $39,580 in sales. And from December 2014 to October 2017, Bottle Deals transacted with 46 Mississippi residents approximately 51 times, for approximately $7,229 in sales.

¶24. While none of the Defendants maintained a physical presence in Mississippi at any point, they nonetheless conducted business in Mississippi by means of their respective websites, which gave them a virtual presence in Mississippi. Based on our review of the record, each Defendant operated a virtual store in Mississippi, and they are subject to personal jurisdiction in this state under Mississippi's long-arm statute.

## II. Due Process

¶25. Step two in the personal-jurisdiction analysis asks whether adjudicating the claims in a Mississippi forum is consistent with due process. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (quoting ***Int'l Shoe Co. v. Washington***, 362 U.S. 310, 319 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

9

¶26.    Jurisdiction may be general or specific. "General personal jurisdiction is appropriate over a nonresident when no nexus exists between the defendant's activities in the forum state and the litigation, and the contacts with the state are 'systematic and continuous.'" *D1 Sports Holdings, LLC*, 130 So. 3d at 1094-95 (citing *Phillips*, 992 So. 2d at 1141). "Specific personal jurisdiction is exercised over a nonresident when a nexus exists between the litigation and the activities within the state." *Phillips*, 992 So. 2d at 1141.

¶27.    When the plaintiff alleges specific jurisdiction, as the State does here, a three-prong test must be satisfied:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."

*Nordness v. Faucheux*, 170 So. 3d 454, 464 (Miss. 2015) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Generally, "the plaintiff has the burden of demonstrating the first two prongs[; i]f satisfied, the burden shifts to the [nonresident] to prove that jurisdiction would be unreasonable." *Miller v. Provident Advert. and Mktg., Inc.*, 155 So. 3d 181, 191 (Miss. Ct. App. 2014) (citing *Brayton Purcell, LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017)).

### 1.    Minimum contacts

¶28.    Few contacts are required to establish specific jurisdiction. "Even a single purposeful contact is sufficient to satisfy the due process requirement of 'minimum contacts' when the

10

cause of action arises from the contact." ***Thompson v. Chrysler Motors Corp.***, 755 F.2d 1162, 1172 (5th Cir. 1985) (quoting ***McGee v. Int'l Life Ins. Co.***, 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)). A nonresident defendant simply must have "'fair warning' that a particular activity might subject [him or her] to the jurisdiction of a foreign sovereign." ***Burger King***, 471 U.S. at 472 (quoting ***Shaffer v. Heitner***, 433 U.S. 186, 218, 97 S. Ct. 2569, 2587, 53 L. Ed. 2d. 683 (1977)); *see also* ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) ("defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there").

¶29.   The State contends that "minimum contacts" exist because the Defendants benefitted financially from sales to Mississippi residents. The State maintains that a nonresident defendant cannot escape jurisdiction by arguing that it does not have employees or an office in the forum state because "specific jurisdiction may arise without the nonresident defendant's ever stepping foot" in the forum state. ***Am. Cable Corp. v. Trilogy Commc'ns, Inc.***, 754 So. 2d 545, 551 (Miss. Ct. App. 2000). Rather, "[i]t is the purposefulness of the decision that is important and not the physical presence of the defendant in the state." ***Id.***

¶30.   The Defendants contend, however, that they did not deliberately engage in significant activities in Mississippi. They argue that they created no continuing obligations between themselves and Mississippi residents because the contracts were all for one-time sales. Moreover, the contracts specified that title would pass to the buyers at the time of the sale, and thus the buyers were solely responsible for any shipment.

11

¶31.   As the State points out, almost anything—including alcohol—can be purchased online.  Courts have applied differing test for evaluating when online activity constitutes minimum contacts with a forum state:  (I) the *Zippo* sliding-scale test,[4] or (ii) the totality-of-the-circumstances approach.[5]

¶32.   This Court has not pronounced or adopted a single test.  In *Mink v. AAAA Development, LLC*, 190 F.3d 333 (5th Cir. 1999), the United States Court of Appeals for the Fifth Circuit adopted the test set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), explaining it as follows:

> The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet. . . ." *Zippo*, 952 F. Supp. at 1124. . . .  At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet.  With passive websites, personal jurisdiction is not appropriate. *See id.* (citing *Bensusan Restaurant Corp., v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997)).  In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996)).

*Mink*, 190 F.3d at 336.

---

[4] Derived by the federal district court in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

[5] A third test sometimes used is the *Calder* effects test, which comes from the pre-Internet case of *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

¶33.    In *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), the United States Court of Appeals for the Seventh Circuit applied a totality-of-the-circumstances test in holding that personal jurisdiction in Illinois was proper over a Native American cigarette seller based in New Mexico.  In *Hemi Group*, Illinois sued an LLC for selling cigarettes to Illinois residents in violation of state law and federal law.  *Id.* at 756.  The federal district court denied the LLC's motion to dismiss for lack of personal jurisdiction, finding that the Internet transactions sufficed to establish jurisdiction in Illinois.  *Id.*

¶34.    Affirming the district court, the Seventh Circuit did not base its decision on *Zippo*'s sliding-scale test, stating as follows:

> We reach the same conclusion under *Zippo*.  *Zippo*'s sliding scale was always just short-hand for determining whether a defendant had established sufficient minimum contacts with a forum to justify exercising personal jurisdiction over him in the forum state.  But we think that the traditional due process inquiry . . . is not so difficult to apply to cases involving Internet contacts that courts need some sort of easier-to-apply categorical test.

*Id.* at 759.

¶35.    *Hemi Group*, instead, found that the LLC expressly elected to do business in Illinois and "stood ready and willing to do business with Illinois residents[,]" and the LLC "in fact, knowingly did do business with Illinois residents."  *Id.* at 758.

¶36.    Here, whether under the *Zippo* sliding-scale test or the totality-of-the-circumstances test, we find that the minimum-contacts prong of the due process test is met.

¶37.    First, unlike those Internet retailers that make it impossible for Mississippi residents to place an order for alcoholic beverages on their Internet sites, the Defendants knowingly allow Mississippi residents to do so in violation of Mississippi law.  The Defendants, of

13

course, disagree that this is the case because the sales are made F.O.B. at the Defendants' respective places of business in California and New York, so title passes from sellers to the buyers at the moment of delivery to the carrier. Thus, according to the Defendants, the buyer is responsible for the shipment of alcoholic-beverage products into Mississippi and whatever illegalities that result, not the seller.

¶38.    We do not see it that way. The Defendants attempt an end run around Mississippi law and the purposeful-availment due-process requirement by employing F.O.B. terms that customarily govern the shipper's costs or loss from destruction or breakage during delivery.[6] Were it that simple to defeat jurisdiction, almost no entity that engages in the interstate sale of goods and products would be amenable to suit outside of that entity's principle state of business—regardless of their purposeful contact(s) with the other state.

¶39.    As the State points out, the Fifth Circuit addressed a somewhat similar argument in *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465 (5th Cir. 2006). *Luv* held as follows:

> In the interest of promoting that "degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. 559, we conclude that a F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper. This reasoning is supported by authority that states that the primary purpose of a F.O.B. term is to allocate the risk of damage to goods between buyer and seller. Accordingly, Insta-Mix purposely availed itself of the benefit of the

---

[6] We point out, for example, that Gold Medal's sales contracts provide, "If a shipment is damaged in transit we will replace the product at no additional charge."

14

Louisiana market for its bottle, thereby establishing "minimum contacts" with the forum state.

*Id.* at 471-72 (footnotes omitted).

¶40. As we see it, regardless of the F.O.B. contract terms used here by the Defendants in their sales contracts, the Defendants "stood ready and willing to do business" with Mississippi residents, and "knowingly did do business" with Mississippi residents. ***Hemi Group***, 662 F.3d at 758. And they did so frequently. Had the Defendants wanted to avoid being sued in Mississippi, they simply could have chosen—like the other Internet wine-and-spirit retailers—not to sell their alcoholic-beverage products to residents in Mississippi. *See **Zippo***, 952 F. Supp. at 1126-27 ("If Dot Com had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its services to Pennsylvania.").

¶41. Accordingly, we find that the Defendants purposefully established sufficient minimum contacts within Mississippi.

### 2. Whether the State's cause of action arises out of or relates to the Defendant's forum-related activities.

¶42. There is no dispute that the State's claims arise out of and are related to the Defendants' activities with Mississippi.

### 3. Whether jurisdiction comports with fair play and substantial justice.

¶43. The Supreme Court has outlined factors to be considered in determining whether personal jurisdiction will comport with fair play and substantial justice:

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal Indust. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting *World-Wide Volkswagen*, 444 U.S. at 292); *Phillips*, 992 So. 2d at 1141-42.

¶44. The Defendants do not argue that they would be burdened by having to defend a lawsuit in Mississippi. The State, however, argues that Mississippi courts have a strong interest in providing a forum to resolve disputes involving the state itself. We agree with the State. *E.g.*, *Hemi Group*, 622 F.3d at 760. Accordingly, we find that personal jurisdiction over the Defendants comports with fair play and substantial justice.

### CONCLUSION

¶45. We find that the doing-business component of Mississippi's long-arm statute is applicable to the Defendants. We further find that each of the Defendants have established sufficient minimum contacts with Mississippi and that those contacts relate to the State's claims against the Defendants. Personal jurisdiction over each of the Defendants comports with fair play and substantial justice and does not violate their constitutional due process rights.

¶46. Accordingly, we reverse the trial court's dismissal of State's case for lack of personal jurisdiction over the Defendants. We remand the case to the Rankin County Chancery Court for further proceedings consistent with this opinion.

¶47. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**